# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Luminara Worldwide, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>Liown Electronics Co. Ltd., Liown Technologies/Beauty Electronics, LLC, Shenzhen Liown Electronics Co. Ltd., Boston Warehouse Trading Corp., Abbott of England (1981), Ltd., BJ's Wholesale Club, Inc., Von Maur, Inc., Zulily, Inc., Smart Candle, LLC, Tuesday Morning Corp., Ambient Lighting, Inc., The Light Garden, Inc., and Central Garden & Pet Co.,<br>    Defendants. | Case No. 14-cv-3103 (SRN/FLN)<br><br><br>**MEMORANDUM OPINION AND ORDER**<br><br>**[FILED UNDER SEAL]** |
| Liown Electronics Co. Ltd., Liown Technologies/Beauty Electronics, LLC, Shenzhen Liown Electronics Co. Ltd., Boston Warehouse Trading Corp., Abbott of England (1981), Ltd., BJ's Wholesale Club, Inc., Von Maur, Inc., Zulily, Inc., Smart Candle, LLC, Tuesday Morning Corp., Ambient Lighting, Inc., The Light Garden, Inc., and Central Garden & Pet Co.,<br><br>    Counterclaim Plaintiffs,<br><br>v.<br><br>Luminara Worldwide, LLC, QVC, Inc., Darice, Inc., Bed Bath & Beyond, Inc., Williams-Sonoma Stores, Inc., PC Treasures, Inc., and Brookstone Stores, Inc.,<br><br>    Counterclaim Defendants. | |

Daniel R. Hall, Joseph W. Anthony, and Courtland C. Merrill, Anthony Ostlund Baer & Louwagie PA, 90 South 7th Street, Suite 3600, Minneapolis, MN 55402; Ryan S. Dean, Fish & Tsang LLP, 2603 Main Street, Suite 1000, Irvine, CA 92614, for Plaintiff and Counterclaim Defendant Luminara Worldwide LLC, and Counterclaim Defendants QVC, Inc., Darice, Inc., Bed Bath & Beyond, Inc., Williams-Sonoma Stores, Inc., PC Treasures, Inc., and Brookstone Stores, Inc.

Devan V. Padmanabhan, Erin O. Dungan, Nadeem Schwen, Brooks F. Poley, Lukas Dustin Jonathon Toft, and Paul J. Robbennolt, Winthrop & Weinstine, PA, 225 South 6th Street, Suite 3500, Minneapolis, MN 55402-4629; Thomas Nathan Millikan, Perkins Coie LLP, 11988 El Camino Real, Suite 350, San Diego, CA 92130-2594, for Defendants and Counterclaim Plaintiffs Liown Electronics Co. Ltd. and Liown Technologies/Beauty Electronics, LLC.

Devan V. Padmanabhan, Erin O. Dungan, Nadeem Schwen, Brooks F. Poley, Lukas Dustin Jonathon Toft, and Paul J. Robbennolt, Winthrop & Weinstine, PA, 225 South 6th Street, Suite 3500, Minneapolis, MN 55402-4629; Thomas Nathan Millikan and Joseph P. Reid, Perkins Coie LLP, 11988 El Camino Real, Suite 350, San Diego, CA 92130-2594, for Defendant and Counterclaim Plaintiff Shenzhen Liown Electronics Co. Ltd.

Devan V. Padmanabhan, Nadeem Schwen, Brooks F. Poley, Lukas Dustin Jonathon Toft, and Paul J. Robbennolt, Winthrop & Weinstine, PA, 225 South 6th Street, Suite 3500, Minneapolis, MN 55402-4629; Thomas Nathan Millikan, Perkins Coie LLP, 11988 El Camino Real, Suite 350, San Diego, CA 92130-2594, for Defendants and Counterclaim Plaintiffs Boston Warehouse Trading Corp., Abbott of England (1981), Ltd., Von Maur, Inc., Zulily, Inc., Smart Candle, LLC, Tuesday Morning Corp., The Light Garden, Inc., Central Garden & Pet Co., and BJ's Wholesale Club, Inc.

Lukas Dustin Jonathon Toft and Paul J. Robbennolt, Winthrop & Weinstine, PA, 225 South 6th Street, Suite 3500, Minneapolis, MN 55402-4629; Thomas Nathan Millikan, Perkins Coie LLP, 11988 El Camino Real, Suite 350, San Diego, CA 92130-2594, for Defendant and Counterclaim Plaintiff Ambient Lighting, Inc.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter is before the Court on (1) the Liown Defendants' Motion to Modify and to Stay the Preliminary Injunction Pending Reconsideration or Appeal [Doc. No. 166], and

(2) Plaintiff's Motion to Strike Memoranda of Law Filed in Violation of Local Rule 7.1

[Doc. No. 187].  For the reasons set forth below, the Court (1) grants, in part, and denies, in

part, the Liown Defendants' Motion, and (2) denies Plaintiff's Motion.

## II.    BACKGROUND

The Court has thoroughly detailed the facts of this case in its previous orders.

Thus, the Court only recounts facts relevant to the pending motions.

On April 20, 2015, the Court issued an order granting Plaintiff's Motion for

Preliminary Injunction.  The Court ruled that "Defendants [were] enjoined from

manufacturing, distributing, offering for sale, selling, or importing moving flameless

candles to Plaintiff's customers."  (4/20/15 Order at 55 [Doc. No. 147].)  Additionally, the

Court ordered Defendants to "recall any and all moving flameless candles currently in

Plaintiff's customers' stores or distribution centers."  (See id.)  The Court also ruled that,

pursuant to Fed. R. Civ. P. 65(c), Plaintiff was required to "post a bond with the Clerk of

the Court in the amount of $100,000 for the payment of such costs and damages as may

be incurred or suffered by Defendants in the event Defendants are found to have been

wrongfully enjoined or restrained."  (See id.)

On May 4, 2014, the Liown Defendants (Defendants Liown Electronics Co. Ltd.,

Liown Technologies/Beauty Electronics, LLC, and Shenzhen Liown Electronics Co.

Ltd.) filed a Motion to Modify and to Stay the Preliminary Injunction Pending

Reconsideration or Appeal [Doc. No. 166].  Defendants sought: (1) clarification about

which customers are enjoined by the Court's April 20, 2015 order; (2) modification of the

bond amount; and (3) a stay of the Court's preliminary injunction.  (See generally Defs.'

Mem. [Doc. No. 168].)  During a telephonic conference on May 6, 2015, the Court

clarified that any of Defendants' arguments pertaining to reconsideration of the merits of

the Court's April 20, 2015 Order would not be permitted.  Therefore, the only proper

issues before the Court are the three issues outlined above.

Plaintiff filed a response memorandum on May 12, 2015, addressing these three

issues [Doc. No. 184].  On the same day, Defendant The Light Garden, Inc. [hereinafter,

"The Light Garden"] and Defendant Central Garden & Pet Co. (GKI) [hereinafter,

"GKI"] filed their own separate briefs [Docs. No. 185, 186], in support of the Liown

Defendants' Motion.

In response to The Light Garden's and GKI's briefs, Plaintiff filed a Motion to

Strike Memoranda of Law Filed in Violation of Local Rule 7.1 [Doc. No. 187].

Luminara argues that The Light Garden's and GKI's briefs were untimely and "constitute

an impermissible attempt to file . . . otherwise prohibited memorand[a] of law."  (See

Pl.'s Mem. in Supp. of Mot. to Strike at 2 [Doc. No. 188].)  The Court heard oral

argument on the pending issues on May 14, 2015.  At the hearing, the Court sought

clarification and further briefing on the issue of (1) whether The Light Garden should

properly be considered a "customer" of Luminara's, and (2) whether Luminara could

satisfy purchase orders from The Light Garden going forward.  (See Minutes [Doc. No.

192].)  The parties duly filed these briefs on May 18, 2015 [Docs. No. 199, 201].

## III.   MOTION TO STRIKE

Plaintiff moves the Court, pursuant to District of Minnesota Local Rule 7.1, to

strike GKI's and The Light Garden's briefs [Docs. No. 185, 186].  (See Pl.'s Mot. to

Strike [Doc. No. 187].)  Plaintiff claims that the briefs filed by GKI and The Light

Garden are untimely and are in violation of District of Minnesota Local Rule 7.1(b)(3),

which prohibits reply briefs "in support of non-dispositive motions," and Local Rule

7.1(i), which prohibits briefs that are not "expressly allowed."  See D. Minn. L.R.

7.1(b)(3), (i); (Pl.'s Mem. in Supp. of Mot. to Strike at 2 [Doc. No. 188].)

Although GKI's and The Light Garden's briefs appear to be memoranda that were

not expressly allowed by the Court, for the sake of undertaking a full and complete

review of Defendants' arguments and submissions, the Court denies Plaintiff's request to

strike these briefs.  See, e.g., VanDyke v. Minneapolis Police Dep't, No. 14-cv-224

(SRN/SER), 2015 WL 138060, *2 n.5 (D. Minn. Jan. 7, 2015) (explaining that although

the plaintiff's reply was filed in contravention to Local Rule 7.1(i), the Court considered

the plaintiff's reply "to the extent it [was] helpful to explain [his legal position]");

Augustine v. United States, No. 13-cv-1417 (DWF/LIB), 2014 WL 1386378, *1 n.2 (D.

Minn. Feb. 20, 2014) report and recommendation adopted, No. 13-cv-1417 (DWF/LIB),

2014 WL 1028358 (D. Minn. Mar. 14, 2014) (noting that although "[m]oving parties are

not traditionally afforded the opportunity to submit reply memoranda for the Court's

consideration of non-dispositive motions," the plaintiff was permitted to do so in this case

"for the sake of undertaking a full and complete review of  [the p]laintiff's arguments and

submissions"); George v. Uponor, Inc., 290 F.R.D. 574, 575 n.1 (D. Minn. 2013)

(permitting a party to file a reply brief for a non-dispositive motion without prior

permission from the court).  Therefore, Plaintiff's Motion to Strike is denied.

## IV.    CLARIFICATION OF PRELIMINARY INJUNCTION ORDER

The Liown Defendants request clarification of the Court's order as to which "customers" are enjoined.  (See Liown Defs.' Mem. at 2–5 [Doc. No. 168].)  Luminara does not object to clarification of the Court's preliminary injunction order to reflect the identity of Luminara's customers.  (See Pl.'s Mem. in Opp'n at 2 [Doc. No. 184].) During the hearing, the parties purported to present a joint stipulation seeking to clarify the scope of the Court's April 20, 2015 preliminary injunction order.  However, Defendant The Light Garden opposed this joint stipulation, and argued that it was not properly considered a "customer" of Luminara's, and therefore should not be included in the list of customers that are enjoined.  (See Defs.' Joint Supp. Briefing at 2–4 [Doc. No. 201].)

In contrast, Luminara claims that because The Light Garden continued to submit purchase agreements throughout 2014, The Light Garden is properly considered a "customer" of Luminara's.  (See Pl.'s Supp. Mem. at 1 [Doc. No. 199].)  In fact, according to The Light Garden's own records, The Light Garden submitted eight purchase orders for Luminara candles from February 18, 2014, to June 11, 2014.  (See Padmanabhan Decl., Ex. A [Doc. No. 202-1].)  These purchase orders amounted to over ███████ in moving flameless candles and related accessories.  (See Pl.'s Supp. Mem. at 1 [Doc. No. 199].)  Additionally, Plaintiff contends that although Luminara could not currently sell moving flameless candles to The Light Garden, The Light Garden would be able to purchase candles from Counterclaim Defendant Darice, Inc, Luminara's new exclusive distributor.  (See id. at 4.)

6

The Court finds that because The Light Garden continued to submit purchase orders to Luminara for several months in 2014, The Light Garden is properly considered a "customer" of Luminara's for purposes of the preliminary injunction.  While The Light Garden was subject to a restrictive covenant with Luminara until December 31, 2014, the remainder of the distribution agreement between the parties expired on December 31, 2013.[1]  (See Cain Decl., Ex. B "The Light Garden Distribution Agreement" §§ 10.01, 2.04 [Doc. No. 53-1].)  In other words, The Light Garden was not obligated to purchase moving flameless candles from Luminara after December 31, 2013, but The Light Garden was prohibited from purchasing "confusingly similar" candles from any other supplier until December 31, 2014.  (See id.)  Nonetheless, The Light Garden continued to purchase products from Luminara well into 2014, even though it was not contractually obligated to do so.

The Light Garden argues that because it stopped buying candles from Luminara after June 2014, it should not be considered Luminara's current customer.  (See The Light Garden's Mem. at 5–6 [Doc. No. 186].)  The Court finds that this recent change in buying habits does not negate The Light Garden's status as Luminara's "customer." Based on the face of the agreement between The Light Garden and Luminara, The Light Garden was not contractually permitted to purchase moving flameless candles from Liown or any supplier other than Luminara; and therefore, it appears that The Light Garden's purchases from Liown violated the restrictive covenant it had with Luminara.

---

[1]     During the hearing, Plaintiff's counsel informed the Court that litigation is currently pending in Minnesota State Court about The Light Garden's alleged breach of this restrictive covenant.

Accordingly, had it not been for Liown's alleged infringement and sale of allegedly infringing candles, The Light Garden would have only purchased moving flameless candles from Luminara in 2014.

Plaintiff's counsel argued during the hearing that a contract requiring an entity to place purchase orders need not exist in order for an entity to be considered Luminara's "customer." As an example of this, Plaintiff's counsel pointed out that Defendant Ambient did not have a contract with Luminara, but was merely buying candles from Luminara in 2013, until Ambient began purchasing candles from Liown. Because Defendants do not contend that Ambient is not considered Luminara's customer, and Ambient has not purchased candles from Luminara since 2013, then The Light Garden is necessarily also considered a customer of Luminara's because it continued to buy candles from Luminara through 2014.

Thus, the Court uses its equitable powers to include The Light Garden in the list of Luminara's customers.[2] Consequently, the Court's grants Defendant's Motion insofar as it seeks clarification of the preliminary injunction order. The preliminary injunction order is clarified as follows:

---

[2]     Insofar as The Light Garden argues that it should not be considered a customer because it was not added as a named Defendant to this case until January 2015 (see The Light Garden's Mem. at 5 [Doc. No. 186], The Light Garden misstates the relevant inquiry for the court. Plaintiff filed its Motion for Preliminary Injunction [Doc. No. 50] on November 26, 2014. In this motion, Plaintiff sought to enjoin the Liown Defendants, Boston Warehouse Trading Corp., and Abbott of England (1981), Ltd. (the only named Defendants at that time) from selling to Luminara's customers, and sought to remove the allegedly infringing candles from Luminara's customers' stores. Therefore, it is immaterial that The Light Garden was not a named Defendant when the preliminary injunction was filed. Rather, the Court need only determine if, on November 26, 2014, The Light Garden could have been considered Luminara's customer.

Plaintiff's Motion for Preliminary Injunction [Doc. No. 50] is **GRANTED**:

    a. Defendants are enjoined from manufacturing, distributing, offering for sale, selling, or importing moving flameless candles to the following customers of Plaintiff Luminara:

        1. Ambient Lighting, Inc.;
        2. Balsam Hill Christmas Tree Co.;
        3. Bed Bath & Beyond, Inc.;
        4. Brookstone Stores, Inc.;
        5. Costco Wholesale co.;
        6. Darice, Inc./Lamrite West, Inc.;
        7. Frontgate;
        8. GKI/Bethlehem Lighting;
        9. Kohl's Corp.;
        10. The Light Garden;
        11. Lowe's Companies, Inc.;
        12. One King's Lane, Inc.;
        13. PC Treasure, Inc.; and
        14. QVC, Inc.
        15. Williams-Sonoma Stores, Inc./Pottery Barn

    b. Defendants who have sold moving flameless candles to any of the following entities must recall any and all moving flameless candles currently in the stores or distribution centers of the following customers of Plaintiff Luminara:

        1. Ambient Lighting, Inc.;
        2. Balsam Hill Christmas Tree Co.;
        3. Bed Bath & Beyond, Inc.;
        4. Brookstone Stores, Inc.;
        5. Costco Wholesale co.;
        6. Darice, Inc./Lamrite West, Inc.;
        7. Frontgate;
        8. GKI/Bethlehem Lighting;
        9. Kohl's Corp.;
        10. The Light Garden;
        11. Lowe's Companies, Inc.;
        12. One King's Lane, Inc.;
        13. PC Treasure, Inc.; and
        14. QVC, Inc.
        15. Williams-Sonoma Stores, Inc./Pottery Barn

    c. Except for the foregoing entities expressly identified herein, no other entities are enjoined by the Court's April 20, 2015 Opinion and Order, and in addition, Defendants are not enjoined by the Court's April 20, 2015 Opinion and Order from selling, offering to sell, or importing

moving flameless candles to be sold to consumers in the general public.

## V.    MODIFICATION OF BOND VALUE

Defendants argue that the Court should increase the size of the bond because "the potential losses to the Defendants are far greater than those apparent when the Court originally granted the injunction here."  (See Liown Defs.' Mem. at 6 [Doc. No. 168].) Specifically, Defendants' counsel argued during the hearing that projected sales reports and profit data demonstrate that the costs and damages, in the event that Defendants are found to have been wrongfully enjoined, is ███████ for the Liown Defendants (based solely on lost profits from sales to GKI and The Light Garden), ███████ for GKI, and ███████ for The Light Garden.  In response, Plaintiff contends that the Court should not increase the bond value because the "new" evidence presented by Defendants "was available at the time of the preliminary injunction hearing and [Defendants] could have presented the evidence then."  (See Pl.'s Mem. in Opp'n at 3 [Doc. No. 184].)

### A.  Standard of Review

"In modifying a preliminary injunction, a district court is not bound by a strict standard of changed circumstances but is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law, or for any other good reason."  Movie Sys., Inc. v. MAD Minneapolis Audio Distribs., 717 F.2d 427, 430 (8th Cir. 1983);[3] see also Uncle B's Bakery, Inc. v. O'Rourke, 938 F. Supp.

---

[3]    Although this is a patent case, and the Court is guided by Federal Circuit case law for issues "unique to patent law," for procedural issues, regional circuit law applies.  See Madey v. Duke Univ., 307 F.3d 1351, 1358 (Fed. Cir. 2002).  As the Federal Circuit explained, regional circuit law is applied to:

1450, 1465 (N.D. Iowa 1996) (finding "other good reasons" to modify a preliminary

injunction).  "The [United States Court of Appeals for the] Eighth Circuit noted in Movie

Systems that the showing required for modification of a preliminary injunction is less

stringent than that required for modification of a permanent injunction or consent

decree." Reg'l Multiple Listing Serv. of Minn., Inc. v. Am. Home Realty Network, Inc.,

960 F. Supp. 2d 988, 994 (D. Minn. 2013) (citing Movie Sys., Inc., 717 F.2d at 430).

Thus, "the focus of the court's inquiry when determining whether modification of a

preliminary injunction is warranted is . . . whether a modification is equitable, *for any*

*reason*, in order to effectuate justice between the parties." Pro Edge L.P. v. Gue, 411 F.

Supp. 2d 1080, 1091 (N.D. Iowa 2006) (emphasis original), [hereinafter Pro Edge I].

### B. Analysis

Here, Defendants have not presented any subsequent, or "new," evidence, since all

of this data was available, and discoverable, when the Court initially considered

Plaintiff's preliminary injunction motion.  Rather, Defendants seek to persuade the Court

to modify the bond value for another "good reason." See Movie Sys., Inc., 717 F.2d at

---

procedural issues that are not themselves substantive patent law issues so
long as they do not (1) pertain to patent law, (2) bear an essential
relationship to matters committed to our exclusive control by statute, or (3)
clearly implicate the jurisprudential responsibilities of this court in a field
within its exclusive jurisdiction.

Int'l Nutrition Co. v. Horphag Research Ltd., 257 F.3d 1324, 1328 (Fed.Cir. 2001)
(internal citations omitted).  Because the standard applied for modifying a preliminary
injunction is a procedural issue, Eighth Circuit case law controls.  (See Liown Defs.'
Mem. at 6 [Doc. No. 168]; Pl.'s Mem. in Opp'n at 3 [Doc. No. 184].)

430.  Defendants' argue that their "good reason" is that underlying sales data and profit reports indicate that the Liown Defendants, GKI, and The Light Garden will likely lose millions of dollars, if the injunction is ultimately deemed wrongful.

As the Court noted in its April 20, 2015 Order, "[t]he requirement of a security bond imposed by [Rule] 65(c) is left to the sound discretion of the district judge." Northwestern Bell Tel. Co. v. Bedco of Minnesota, Inc., 501 F. Supp. 299, 304 (D. Minn. 1980).  Therefore, it is within the Court's discretion to determine whether Defendants' untimely evidence is a "good reason" to modify the bond value and effectuate justice between the parties.

The Court holds that Defendants have not presented a "good reason" to modify the bond value set because (1) Liown, GKI, and The Light Garden could have presented financial evidence documenting their expected losses earlier in these proceedings; and (2) Liown's, GKI's, and The Light Garden's financial loss predictions are fundamentally flawed.

## 1.  Untimely Presentation of Evidence

First, the Court notes that all of the sales data and profit calculations offered by the Liown Defendants could have been presented when the Court was initially considering the value of the bond.  The Liown Defendants simply chose not to present the data at the time, and merely relied on a single declaration from the CEO of Liown, John Yang, who speculated that a preliminary injunction would cause Liown to suffer ███████████ in lost sales.  (See 4/20/15 Order at 43 [Doc. No. 147].)  No evidence of lost profits was proffered.  Taking a second bite at the apple, now, the Liown Defendants submit

purchase orders and profit calculations in an effort to substantiate their anticipated losses.

As to GKI and The Light Garden, although both Defendants were not served with a summons and a Second Amended Complaint until January 22, 2015 [Doc. No. 119], and January 26, 2015 [Doc. No. 120], respectively, they still had advance actual notice of the February 6, 2015 preliminary injunction hearing.  The Court is confident that these Defendants had actual notice of the upcoming preliminary injunction hearing because GKI and The Light Garden hired the same counsel that is, and was, representing the Liown Defendants.  Therefore, GKI and The Light Garden had approximately two weeks to inform the Court of any objections they had to the hearing proceeding as scheduled. Although the parties may not have been prepared to articulate their precise objections to the preliminary injunction itself, they could have requested an extension to respond to the preliminary injunction motion.  Additionally, Defendants' counsel could have informed the Court at the preliminary injunction hearing of concerns specific to GKI and The Light Garden.

### 2.   Insufficient Accuracy of Evidence

Regardless of when the Liown Defendants, GKI, and The Light Garden could have presented their evidence about prospective lost profits to the Court, the Court finds that this evidence lacks sufficient accuracy to constitute a "good reason" for the Court to modify the bond value.  Below, the Court addresses the insufficiency of the evidence for each of the three entities.

### i.   Liown Defendants

As a preliminary matter, the Court notes that the Liown Defendants' calculation of

prospective lost profits in their brief erroneously included projected lost sales and profits from the Encandra candle, Liown's non-moving flameless candle. (See Pl.'s Mem. in Opp'n at 5 [Doc. No. 184].) As the Court's preliminary injunction only applies to Liown's moving flameless candles, Plaintiff aptly notes that sales and profits from the Encandra candle would not be affected. Defendants admitted at the hearing that their proposed calculation, which they included in their briefing, was incorrect. (Cf. Yang Decl. ¶ 11 [Doc. No. 173].) Although, at the hearing, the Liown Defendants subsequently recalculated the value of projected lost *sales* to GKI from this injunction, they did not recalculate the value of projected lost *profits*.

Regardless of the fact that the Liown Defendants did not recalculate their projected lost profits, excluding profits from Encandra candles, the Court finds that Defendants' analysis remains flawed. According to Federal Rule of Civil Procedure 65(c), security for a preliminary injunction should be in "an amount that the court considers proper to pay the costs and *damages* sustained by any party found to have been wrongfully enjoined or restrained." See Fed. R. Civ. P. 65(c) (emphasis added). Thus, a defendant's bond calculation "should be supported by evidence as strong as the evidence supporting a damage calculation submitted at trial." See Sean M. Berkowitz, et al., Provisional Remedies, 2 Bus. & Com. Litig. Fed. Cts. § 17:16 (3d ed. 2014).

Here, the Court finds that an accurate assessment of the Liown Defendants' prospective damages should take into account whether Liown reasonably mitigated its damages. Mitigation is an appropriate consideration in the Court's bond calculation because "generally, the amount of the bond posted is the limit that a wrongfully

14

restrained party may recover," <u>Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.</u>, 323 F.

Supp. 2d 525, 541 (S.D.N.Y. 2004), and parties seeking damages are often expected to

exercise reasonable diligence to lessen the damages caused.  In fact, courts have held that

damages for a defendant, who was wrongfully enjoined, are limited by the "defendant's

failure to mitigate damages."  <u>See</u> <u>Sionix Corp. v. Moorehead</u>, 299 F. Supp. 2d 1082,

1086 (S.D. Cal. 2003) (citing <u>Coyne-Delany Co. v. Capital Dev. Bd. of the State of Ill.</u>,

717 F.2d 385, 392 (7th Cir. 1983)).  Thus, if a court set a bond value that exceeds a

defendant's actual damages, then the court may prohibit that defendant from recovering

the full value of the bond.  <u>See</u> <u>id.</u>; <u>Pro Edge L.P. v. Gue</u>, 451 F. Supp. 2d 1026, 1030–31

(N.D. Iowa 2006) [hereinafter <u>Pro Edge II</u>].  In order to avoid setting an improperly high

bond value, the Court finds that Defendants should have presented evidence of their

prospective damages, which took into account their requirement to mitigate.

   In this case, the Liown Defendants could potentially mitigate their damages by

purchasing, and then reselling, Luminara's Artificial Flame Technology candles.

Luminara stated in supplemental briefing to the Court that Counterclaim Defendant

Darice, Inc., which is now the exclusive distributor of Luminara's Artificial Flame

Technology candles, "is willing and able to supply moving flameless candles to [The]

Light Garden as a Luminara wholesaler."  (<u>See</u> Pl.'s Supp. Mem. at 4 [Doc. No. 199].)

Similarly, Darice is also likely willing and able to supply Liown with moving flameless

candles.  Alternatively, Liown could attempt to mitigate its damages by selling more

Encandra candles, or non-moving flameless candles.  Regardless of how Liown chose to

mitigate its damages, in order to be entitled to *any* damages, Liown would be responsible

15

for reasonably attempting to mitigate its damages in *some* way.  Although these options may not ultimately reduce Liown's lost profits, Liown failed to present any evidence or calculations demonstrating the efficacy or inefficacy of these mitigation options. Because the Liown Defendants submitted untimely evidence, and, nonetheless, failed to present an accurate estimate of their lost profits, which took into account at least one avenue for mitigating damages, the Court is reluctant to raise the bond value.

## ii.       GKI and The Light Garden

The Court finds that GKI's and The Light Garden's damage calculations are also not sufficiently accurate for the Court to consider this evidence a "good reason" to alter the previously ordered bond value.  Like the Liown Defendants, GKI and The Light Garden would be expected to exercise reasonable diligence to lessen the damages they incurred.  And, as was the case with the Liown Defendants, GKI and The Light Garden could potentially mitigate their damages by purchasing Luminara's Artificial Flame Technology candles from Darice, rather than purchasing them from Liown.  See Nokia Corp. v. InterDigital, Inc., 645 F.3d 553, 559 (2d Cir. 2011) (explaining that the wrongfully enjoined party must "properly substantiate the damages sought"); see also Intercapital Debt Trading Ltd. v. Cantor Fitzgerald Inc., No. 94 CIV 9275, 1996 WL 167820, *2 (S.D.N.Y. Apr. 10, 1996) (explaining that "'a good reason for not awarding damages against [a] Fed. R. Civ. P. 65(c) security would be that the defendant had failed to mitigate damages.'") (quoting Coyne-Delany, 717 F.2d at 392) (alterations omitted)). GKI and The Light Garden failed to present an estimate of lost profits that took into account the possibility of mitigating their damages.  (See generally Central Garden & Pet

16

Co.'s Mem. [Doc. No. 185]; The Light Garden's Mem. [Doc. No. 186]; Wenz Decl. ¶ 6 (estimating GKI's lost profits for 2015, without taking into account mitigation) [Doc. No. 172]; Elson Decl. ¶ 5 (estimating The Light Garden's lost profits for 2015, without taking into account mitigation) [Doc. No. 169].)  While purchasing candles from Darice may not ultimately reduce GKI's and The Light Garden's damages, the Court cannot determine whether this is truly the case because the record is devoid of relevant calculations, which take into account Darice as an alternate supplier.  Accordingly, in the absence of sufficiently accurate evidence, the Court denies Defendants' request to increase the bond value.

### 3.  Distinguishable Cases

This case is distinguishable from other cases cited by Defendants, in which courts have held that a modification of a bond value was justified by a "good reason."  For instance, in Uncle B's Bakery, a district court in Iowa held that modification of a preliminary injunction was necessary in order to clarify which third party employers fell within the scope of the injunction.  See 938 F. Supp. at 1464.  Specifically, the court held that modification was "justified" for "prospective employers [to] have a clearer idea whether or not they [fell] into the category of 'direct or indirect' competitors with whom employment [was] prohibited."  See id.  In contrast, in this case, Defendants' request for a bond modification is not justified because it does not stem from lack of clarity of the Court's preliminary injunction order.  Rather, Defendants merely seek another bite at the apple in an effort to substantiate a greater bond value.

This case is also distinguishable from Northern States Power Co. v. Federal

Transit Administration, 270 F.3d 586 (8th Cir. 2001).  In Northern States Power Co., the Eighth Circuit determined that it was necessary to modify the bond value from $50,000 to $8,000,000 because "at the oral argument, substantial uncertainties developed about where the money would come from if the [defendant] ultimately had to reimburse the plaintiff for the work."  See 270 F.3d at 588.  Thus, the "good reason" for modification stemmed from the court's concern about the ability of the defendant to satisfy a judgment, if one was ultimately rendered against it.  See id.  In contrast, here, Defendants have not presented any evidence to the Court about Luminara's inability to satisfy a judgment, if a court ultimately finds that Defendants were wrongfully enjoined.

### 4.  Bond Value Does Not Limit Defendants' Potential Damages

Significantly, the Court notes that if Defendants are later found to have been wrongfully enjoined, then Defendants' damages are not limited to the amount of the bond set by the Court.  See Minn. Min. & Mfg. Co. v. Rauh Rubber, Inc., 130 F.3d 1305, 1309 (8th Cir. 1997) (finding that "[t]he $100,000 bond is a security device, not a limit on the damages [that the defendants] . . . may obtain against [the plaintiff] if the facts warrant such an award.").  Rather, Defendants "may recover additional damages in excess of the bond amount if such an award is warranted under the facts of this case."  See Pro Edge II, 451 F. Supp. 2d at 1033; see also Sak v. City of Aurelia, Iowa, 832 F. Supp. 2d 1026, 1047–48 (N.D. Iowa 2011).

Therefore, although Defendants may be correct that Luminara may break the "promises it is presently making to the Court [about supplying Defendants with moving flameless candles]," (cf. Defs.' Joint Supp. Briefing at 6 [Doc. No. 201]), Luminara

18

would still be liable for the resulting damages that those broken promises would cause Defendants to incur.  In other words, even if Darice poorly services Defendants and fails to provide timely shipments or quality products, Defendants would be able to recover the difference between the profits they projected obtaining in 2015, and the profits they ultimately obtained while using Darice as their supplier.  The Court also notes that because Defendants have not presented any evidence questioning Luminara's ability to pay damages greater than $100,000, the Court is not concerned with Plaintiff's ability to satisfy a significant judgment, if one is ultimately rendered against Luminara.  See N. States Power Co., 270 F.3d at 588.

In sum, the Court holds that modification of the bond value is not warranted in this case, but notes that if Defendants are later determined to have been improperly enjoined, Defendants will have the opportunity to prove that their damages are greater than $100,000.

## VI.    MOTION TO STAY

The Liown Defendants also request this Court to enter a stay of the preliminary injunction that was granted on April 20, 2015.  (See Liown Defs.' Mem. at 7–8 [Doc. No. 168].)  "The party seeking a stay pending appeal must show (1) that it is likely to succeed on the merits; (2) that it will suffer irreparable injury unless the stay is granted; (3) that no substantial harm will come to other interested parties; and (4) that the stay will do no harm to the public interest."  Fargo Women's Health Org. v. Schafer, 18 F.3d 526, 538 (8th Cir. 1994) (internal quotations and citations omitted); see also Iowa Utilities Bd. v. F.C.C., 109 F.3d 418, 423 (8th Cir. 1996).  While no factor alone is determinative, the

Eighth Circuit has indicated that "likelihood of success on the merits is most significant." S & M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992), cert. denied, 506 U.S. 863 (1992). Additionally, while the stay test does not formally include a balancing of the equities, the Eighth Circuit has interpreted the test as requiring a court to consider a "balance of equities." See James River Flood Control Ass'n v. Watt, 680 F.2d 543, 545 (8th Cir. 1982) (applying the stay test and holding that a stay was warranted in the case because "the balance of equities favor[ed] the [defendant]").

Because determining whether to grant a stay is a generally procedural issue, the parties appear to agree that Eighth Circuit case law controls. (See Liown Defs.' Mem. at 8 [Doc. No. 168]; Pl.'s Mem. in Opp'n at 12 [Doc. No. 184].) The Court notes, however, that the first factor in the stay analysis – likelihood of success on the merits – is an issue unique to patent law. See Madey, 307 F.3d at 1358. Therefore, this procedural stay analysis necessarily requires the Court to consider an issue that bears an essential relationship to matters committed to Federal Circuit control. See Int'l Nutrition Co., 257 F.3d at 1328.

Under Federal Circuit case law, this Court would apply a similar test to determine whether to grant a stay. As the Federal Circuit explained in E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co., when determining whether to grant a stay, pending appeal, the court must "assess[] [the] movant's chances for success on appeal and weigh[] the equities as they affect the parties and the public." See 835 F.2d 277, 278 (Fed. Cir. 1987); see also Hilton v. Braunskill, 481 U.S. 770, 778 (1987)). Although this test is not precisely the same as the Eighth Circuit four-factor test, the two approaches are

substantially similar.  The Court proceeds by analyzing the facts of this case under both

Eighth Circuit and Federal Circuit case law and notes that the Court's holding is

consistent regardless of which case law governs.

The Court has already considered factors, which are substantially similar to those

in the stay analysis, when determining whether to grant the preliminary injunction in the

first instance.  (See 4/20/15 Order at 8 [Doc. No. 147].)  Specifically, the Court

determined that preliminary injunctive relief was warranted based on "(1) the likelihood

of movant's success on the merits; (2) the threat of irreparable harm to the movant in the

absence of relief; (3) the balance between that harm and the harm that the relief would

cause to the other litigants; and (4) the public interest."  (See id.) (citing Watkins Inc. v.

Lewis, 346 F.3d 841, 844 (8th Cir. 2003)).  Thus, Defendants are asking the same Court

that earlier found that *Luminara* was likely to succeed on the merits, to reverse its finding

and determine that *Defendants* are likely to succeed on the merits.  Below, the Court

considers each of the four factors required in the stay analysis, and finds that Defendants

have failed to meet their burden.

### A.  Likelihood of Success on the Merits

Defendants must show that they are "likely" to succeed on the merits, or at least

have a chance at success, in order for the Court to grant a stay.  See Iowa Utils. Bd., 109

F.3d at 423; Fargo Women's Health Org.,18 F.3d at 538; E.I. DuPont de Nemours & Co.,

835 F.2d at 278.  Here, the Liown Defendants argue that they are likely to succeed on the

merits because the claim at issue, claim 1 of United States Patent No. 8,696,166 ("the

'166 patent"), is invalid.  (See Liown Defs.' Mem. at 8 [Doc. No. 168].)

The Court already carefully considered evidence about the validity of claim 1 of the '166 patent in its April 20, 2015 Order, and determined that Defendants failed to raise substantial doubt about the validity of the '166 patent.  (See 4/20/15 Order at 9–29 [Doc. No. 147].)  Defendants take issue with the Court's claim construction in its April 20, 2015 Order, and contend that the Court improperly construed the term "pivot" in the '166 patent.  (See Liown Defs.' Mem. at 9–11 [Doc. No. 168].)  The Court disagrees, and rests on the claim construction reasoning in its April 20, 2015 Order.

Defendants also argue that the Court's determination about the validity of the '166 patent is flawed because the United States Patent and Trademark Office ("USPTO") rejected "another member of the same patent family" (United States Patent No. 8,534,869), explaining that it was anticipated by the '455 patent.  (See id. at 11.)  The Court does not find this evidence persuasive enough to change its holding about Plaintiff's likelihood of success on the merits.  Regardless of what caused the USPTO to deny a patent for "another member of the same patent family," the Court notes that the USPTO specifically considered the '455 patent when examining and deciding to grant the '166 patent.  (See 4/20/15 Order at 25–26 [Doc. No. 147].)  Thus, the USPTO determined that the '455 patent did not anticipate the claims in the '166 patent.  Accordingly, the Court disagrees with Defendants and does not find that "there is a substantial question" as to whether the '455 patent anticipated the '166 patent.  (Cf. Liown Defs.' Mem. at 12 [Doc. No. 168].)

Additionally, the Liown Defendants contend that there is a substantial question as to the validity of the '166 patent given "recently obtained evidence [which] confirms that

Mr. Li developed the single-pendulum design before he ever met with Candella and suggests that if either party engaged in copying, it was [Plaintiff].''  (See id. at 21.) Defendants point to meta-data from Mr. Li's computer that allegedly shows that Mr. Li conceived and drew the single-pendulum LED candle invention by or around November 19, 2009. (See id.)

As an initial matter, the Court notes that this "new" evidence could have, and should have been presented earlier.  Defendants have been in contentious litigation about the validity of Liown's patents dating back to 2013.  Specifically, Defendants had the opportunity to present this evidence to the Court when the Court was initially considering the merits of the preliminary injunction motion.  Yet, Defendants failed to do so.

Regardless of Defendants' tardiness in submitting this meta-data evidence, the meta-data does not alter the Court's ruling about the validity of the '166 patent.  As Plaintiff's counsel aptly explained during oral argument, claim 1 of the '166 patent does not require a single-pendulum design.  Claim 1 provides as follows:

> 1. A pendulum member for generating a flickering flame effect, comprising:
>
> a [1] **body** with upper and lower portions;
>
> a [2] **flame silhouette** element extending outward from the upper portion of the body;
>
> and [3] **a hole** in the body below the flame silhouette element, wherein the hole is configured to receive [4] **a flame support** element such that the flame support element passes through the hole and the body is free to pivot when supported by the flame support element.

(See Merrill Decl., Ex. 5, "'166 Patent" [Doc. No. 55-1].)  Nothing in the plain language of claim 1 requires the pendulum to be a single-stage pendulum.  Therefore, it is

23

immaterial if Mr. Li created a design for a moving candle that utilized a single-pendulum design before the '166 patent issued.

Moreover, the specification in Disney's first Artificial Flame Technology patent, United States Patent No. 7,837,355 ("the '355 patent"), which claims a priority date of September 30, 2008,[4] clearly stated that the invention could be "implemented as a unitary, single stage body, in two stages as show in FIG. 1, or as three or more stages if desired."  (See Merrill Decl., Ex. 2 "'355 Patent," Col. 4: 49–52 [Doc. No. 55-1].) Therefore, even if the single-pendulum design was relevant for the Court's inquiry, Plaintiff presented sufficient evidence demonstrating that Disney's patents encompass a single-stage design.

Other courts in this District have held that "[i]n the context of a stay motion, 'the likelihood of success on the merits factor focuses not necessarily on whether the applicant has shown a likelihood that its appeal will be successful, although this is relevant, but whether the order involves the determination of substantial and novel legal questions." Metro Networks Commc'ns Ltd. P'ship v. Zavodnick, No. 03-cv-6198 (RHK/AJB), 2004 WL 73591, *3 (D. Minn. Jan. 15, 2004) (internal quotations and

_____

[4]     While a provisional patent application does not grant patent rights, according to 35 U.S.C. § 119 (e)(1), if a non-provisional patent application is filed no later than twelve months after the date on which the provisional application was filed and if it contains a specific reference to the provisional application, then the non-provisional application may claim the benefit of the provisional application's earlier filing date.  See 35 U.S.C. § 119(e)(1).  Here, Disney filed its '355 patent, its first non-provisional patent application based on the 2008 provisional application, on July 21, 2009, and the patent issued on November 23, 2010.  (See Merrill Decl., Ex. 2 "'355 patent" [Doc. No. 55-1].)  Thus, because the '355 patent was filed less than one year after the provisional application was filed, the '355 patent is entitled to the benefit of the 2008 filing date.

citations omitted); see also In re Workers' Comp. Refund, 851 F. Supp. 1399, 1401 (D.

Minn. 1994).  Even under this standard, the Court finds that a stay is not merited.

Defendants have failed to demonstrate that this case involves the determination of

substantial and novel legal questions.  Rather, Defendants simply disagree with the

Court's claim construction and interpretation of the factual evidence presented.

Finally, the Liown Defendants also argue that "Luminara lacks standing to sue

without Disney because Luminara does not hold all substantial rights in the '166 patent."

(See Liown Defs.' Mem. at 13 [Doc. No. 168].)  The Court already held in an earlier

order that Luminara has standing to sue, without joining Disney.  (See generally 4/3/15

Order [Doc. No. 143].)  The Court need not reconsider the merits of Defendants'

argument as the Court fully addressed these arguments in its April 3, 2015 order. (See

id.)[5]  In sum, the Court finds that the Liown Defendants did not show that they are likely

---

[5]     Nevertheless, the Court takes the opportunity to clarify Defendants' misreading of the Court's April 3, 2015 Order.  Defendants contend that the Court interpreted the term "Affiliate" to mean that an entity would have to be both acquired by *and* licensed by Disney in order to make the moving flameless candles.  (See Liown Defs.' Mem. at 14 [Doc. No. 168].)  Defendants misread the plain language of the Court's order.

The Court outlined two ways in which an entity could be characterized as an "Affiliate" of Disney.  First, Disney could acquire 50% equity of the entity, or the right to appoint a majority of the governing body of an entity.  (See 4/315 Order at 36–37 [Doc. No. 143].)  Second, Disney could grant the entity the right to make the moving flameless candles *for* Disney, as long as Disney also bundled that right with other licensing rights. (See id. at 37.)

The underlying Agreement between Disney and Luminara states that "Disney expressly reserves for itself and its Affiliates the right throughout the world to . . . make, have made, use, sell, offer for sale and import the Licensed Products" throughout the world. (See id. at 39.)  Given the substantial rights that Disney delegated to Candella/Luminara, the Court interpreted this provision of the Agreement "to mean that (1) Disney and its Affiliates could make, use, or sell the products, and (2) Disney and its Affiliates could have the products made *for themselves*, but could not have the products

to succeed on the merits or have a substantial case on the merits.

## B.  Irreparable Harm to Defendants

Defendants must also show that they will suffer irreparable injury unless a stay is granted.  See Fargo Women's Health Org., 18 F.3d at 538; see also E.I. DuPont de Nemours & Co., 835 F.2d at 278.  In its April 20, 2015 Order, the Court already held that enjoining Defendants may cause them to suffer substantial harm.  (See 4/20/15 Order at 45 [Doc. No. 147].)  The additional evidence recently submitted about the Liown Defendants', GKI's, and The Light Garden's expected lost profits, only bolsters the Court's determination that the Defendants would suffer substantial harm if enjoined.  However, the extent of this substantial harm is still unclear, given the fact that, as the Court explained above, see supra Part V, Defendants' estimates about lost profits and harm are insufficiently accurate.  Therefore, when "balanc[ing] the equities," the Court is still not persuaded that Defendants' potential injury outweighs Plaintiff's injury.  See James River Flood Control Ass'n, 680 F.2d at 545; E.I. DuPont de Nemours & Co., 835 F.2d at 278; (cf. Central Garden & Pet Co.'s Mem. at 5 [Doc. No. 185]).

## C.  Substantial Harm to Luminara

In order to demonstrate that a stay is warranted, Defendants must also show that

---

made *for third parties* [such as Defendant Boston Warehouse]."  (See id.)  Therefore, an entity could only be an "Affiliate" if it (1) received a license from Disney to practice more patents than only the Artificial Flame Technology patents; *and* (2) made the Artificial Flame Technology products *for* Disney.  As the Court noted in its April 3, 2015 Order, however, "nothing in the record before the Court indicates that Disney has asked, or intends on asking, Liown to make the products for Disney."  (See id. at 37–38.)  It was for this reason that the Liown Defendants were not considered an Affiliate.

In sum, Defendants misconstrued the Court's prior Order, and mischaracterized the Court's relevant holding.

no substantial harm will come to interested parties.  See Fargo Women's Health Org., 18

F.3d at 538; see also E.I. DuPont de Nemours & Co., 835 F.2d at 278.  The Court finds

that Defendants plainly fail to meet this requirement.  The Court spent a significant

portion of its April 20, 2015 Order detailing the harm that Luminara would suffer if

Defendants were not enjoined.  (See 4/20/15 Order at 29–43 [Doc. No. 147].)

Defendants take issue with the Court's finding that Luminara will suffer

irreparable harm in the absence of a preliminary injunction.  Specifically, the Liown

Defendants argue that (1) Luminara did not present sufficient evidence documenting the

nexus between price erosion of Luminara's products and the entry of Liown's flameless

moving candles into the market; (2) Disney's reputation as an innovator does not

constitute irreparable harm because Disney is not a party to this case and Luminara's

evidence of causation was inadequate; and (3) evidence about confusion between the

"Luminara" and "Illuminaires" trademarks was also inadequate.  (See Liown Defs.'

Mem. at 15–20 [Doc. No. 168].)

Assuming, *arguendo*, that Defendants' arguments about price erosion, Disney's

reputation as an innovator, and trademark confusion are correct (cf. id.), the Liown

Defendants fail to address the fact that the Court held that without a preliminary

injunction Luminara would suffer loss of goodwill and harm to its reputation (see 4/20/15

Order at 33 [Doc. No. 147]).

Defendants correctly note that according to Apple, Inc. v. Samsung Electronics

Co., Ltd., "reputational injury cannot be presumed based on patent infringement."  (See

Liown Defs.' Mem. at 18 (citing Apple, Inc., 678 F.3d 1314, 1325 (Fed. Cir. 2012) [Doc.

No. 168].)  In Apple, Inc., the Federal Circuit concluded that because the plaintiff had only offered "conclusory statements and theoretical arguments . . . without, concrete evidence to support its argument," the plaintiff had failed to establish that "harm to its reputation for innovation [was] likely to occur."  See Apple, Inc., 678 F.3d at 1325 (internal quotations omitted).

In this case, however, Luminara's loss of goodwill and reputational injury are neither simply presumed, nor based on mere conclusory statements.  The President of Luminara, Jerry Cain, stated that Luminara's goodwill was embodied in the proprietary nature of Luminara's flameless candles that incorporated the Artificial Flame Technology.  (See Cain Decl. ¶ 8 [Doc. No. 53].)  Cain explained that "Luminara's goodwill includes customer association of the Artificial Flame Technology with Luminara flameless candles."  (See id.)  Cain further explained that by permitting Liown to sell candles that allegedly incorporate this patented technology, Luminara suffers loss of goodwill.  (See id.)  Specifically, Luminara's goodwill will suffer because it will no longer be the "exclusive source for the Artificial Flame Technology developed by Disney."  (See id. ¶ 12.)  Therefore, the loss of goodwill and harm to Luminara's reputation is material.  Before the Court granted the preliminary injunction, Luminara was no longer the only source for customers and distributors seeking moving flameless candles that allegedly incorporate Disney's Artificial Flame Technology.  Thus, Luminara's exclusive license was rendered a "waste" when Liown began selling allegedly infringing candles.  (See Pl.'s Mem. in Supp. of Preliminary Injunction at 32 [Doc. No. 52].)  This alleged infringement was a tangible violation of Luminara's

28

proprietary rights/goodwill, and was not merely presumed.

The Eighth Circuit addressed the loss of consumer goodwill in <u>Iowa Utilities Board v. F.C.C.</u>, 109 F.3d 418, 426 (8th Cir. 1996).  When stating that "the petitioners' potential loss of consumer goodwill qualife[d] as irreparable harm," the court cited <u>Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.</u>, 22 F.3d 546, 552 (4th Cir. 1994), <u>abrogated on other grounds</u>, <u>Winter v. Natural Resources Defense Council, Inc.</u>, 555 U.S. 7 (2008), which in turn cited <u>Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.</u>, 550 F.2d 189, 196–97 (4th Cir. 1977), <u>abrogated on other grounds</u>, <u>Winter</u>, 555 U.S. 7 (2008).

In <u>Blackwelder</u>, the Fourth Circuit explained that "[w]ord-of-mouth grumbling of customers can convert [a plaintiff's] inability to honor . . . orders into a reputation for general unreliability as a merchant."  <u>See</u> 550 F.2d at 197.  For this reason, the Fourth Circuit explained that the harm posed to the plaintiff's general goodwill "[was] incalculable, not incalculably great or small, just incalculable."  <u>See</u> <u>id.</u>  In fact, the Fourth Circuit quoted Judge Learned Hand for his observation about irreparable harm.  <u>See</u> <u>id.</u>  In <u>Foundry Services, Inc. v. Beneflux Corp.</u>, Judge Hand stated that he "cannot see how the plaintiff [would] ever be able to prove what sales the defendant's competition [would] make it lose, to say nothing of the indirect, though at times far-reaching, effects upon its good will."  <u>See</u> 206 F.2d 214, 216 (2d Cir. 1952) (Hand, J., concurring).

Similar to the Fourth Circuit's finding of irreparable harm in <u>Blackwelder</u>, here, Luminara's threat of irreparable harm stems from customers' perception of Luminara as

no longer the exclusive source for the Artificial Flame Technology developed by Disney.

It would be difficult for Luminara to prove the monetary value of the "effects upon its

good will" if Liown was permitted to continue selling allegedly infringing products.  See

Foundry Servs., Inc., 206 F.2d at 216.  As the Eighth Circuit explained in Medicine

Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc., "[h]arm to reputation and goodwill is difficult, if

not impossible, to quantify in terms of dollars."  See 336 F.3d 801, 805 (8th Cir. 2003).

Moreover, Luminara's reputation and consumer goodwill could be irreparably

damaged if its customers believed it did not enforce its intellectual property rights.  As

the exclusive licensee of Disney's Artificial Flame Technology, with the sole and

exclusive right to enforce those patents, Luminara's reputation partially rests on its ability

and willingness to enforce those patent rights.

Insofar as Defendants argue that Luminara has not adequately demonstrated that it

will suffer irreparable harm because Luminara failed to show a causal nexus between the

alleged infringements and the claimed harm, the Court disagrees.  (Cf. Liown Defs.'

Mem. at 17 [Doc. No. 168].)  Assuming that Liown's candles infringe Plaintiff's

Artificial Flame Technology patents, then Defendants' sale of these candles (pre-

preliminary injunction) caused Luminara to no longer be the only source for customers

and distributors seeking moving flameless candles that incorporated Disney's Artificial

Flame Technology.  Thus, a clear causal nexus exists between Luminara's harm and

Liown's alleged infringement.

The Court also notes that Luminara presented sufficient evidence demonstrating

that Liown's sale of allegedly infringing candles directly caused Luminara to have a loss

in sales.  Plaintiff presented evidence showing that the contracts it had with GKI and The

Light Garden prohibited these Defendants from purchasing moving flameless candles

from any other manufacturer.  On the face of The Light Garden Distribution Agreement,

The Light Garden was prohibited from purchasing moving flameless candles from a

different manufacturer until December 31, 2014.  (See Cain Decl., Ex. B "The Light

Garden Distribution Agreement" § 2.04 [Doc. No. 53-1].)  And, on the face of the GKI

Distribution Agreement, GKI is still prohibited from purchasing moving flameless

candles from a different manufacturer until December 31, 2016.  (See Cain Decl., Ex. A

"GKI/Bethlehem Distribution Agreement" §§ 2.04, 10.01 [Doc. No. 53].)  Thus, the

Court finds that if The Light Garden or GKI had wanted more moving flameless candles,

pursuant to their contracts with Luminara, these Defendants would have been required to

purchase those candles from Luminara, and not Liown.

Defendants aptly note that The Light Garden and GKI could have opted to not

purchase any candles during their respective restrictive covenants, rather than purchase

candles from Luminara.  The Light Garden specifically argues that it likely would not

have purchased any more products from Luminara because of Luminara's alleged supply

issues.  (See The Light Garden's Mem. at 8 [Doc. No. 186].)  However, at this stage in

the proceedings, the Court plausibly assumes that Luminara would have received at least

some of the sales that Liown obtained from The Light Garden and GKI.  See Morton v.

Becker, 793 F.2d 185, 187 (8th Cir. 1986) (explaining that a district court must construe

all reasonable inferences from facts in a plaintiff's complaint, in the light most favorable

to the plaintiff).  The Court's inference is reasonable because even though Luminara

allegedly had performance and supply problems beginning in 2013, (see Elson Decl. ¶ 6

[Doc. No. 169]), The Light Garden continued to place purchase orders with Luminara

through June 2014.  Thus, this purchase behavior not only demonstrates that The Light

Garden had a need for moving flameless candles in 2014, but it also shows that

Luminara's alleged supply problems alone were, plausibly, not reason enough for The

Light Garden to stop using Luminara as a supplier.  Rather, it was only once The Light

Garden realized it could use Liown as its supplier that The Light Garden stopped

purchasing candles from Luminara.  Accordingly, Plaintiff presented sufficient evidence

demonstrating that Liown's entry into the moving flameless candle market was plausibly

the direct cause of at least some of Luminara's lost sales.

In sum, just as Luminara would suffer irreparable harm stemming from loss of

goodwill and harm to reputation had the Court not granted the preliminary injunction, so

too would Luminara suffer this harm if the Court issues a stay of the preliminary

injunction.  Therefore, the Court finds that Defendants fail to show that no substantial

harm will come to Luminara if a stay is issued.  See Fargo Women's Health Org.,18 F.3d

at 538.

### D.  Stay Harms the Public Interest

Finally, Defendants were required to show that the stay would not harm the public

interest.  See id.; E.I. DuPont de Nemours & Co., 835 F.2d at 278.  However, the Court

already held in its April 20, 2015 Order that the public interest is served by a preliminary

injunction in this case because it "protects a patent owner's property rights."  (See

4/20/15 Order at 48 [Doc. No. 147].)

Moreover, the Federal Circuit has noted that ordinarily, a district court "should not grant both a preliminary injunction and a stay." Procter & Gamble Co. v. Kraft Foods Global, Inc., 549 F.3d 842, 849 (Fed. Cir. 2008). The Federal Circuit explained that "[a] grant of a preliminary injunction followed by a stay of the district court proceedings could subject an accused infringer to unfair and undesirable delay in reaching a final resolution." See id. This explanation from the Federal Circuit bolsters the Court's finding that a stay of the preliminary injunction is not warranted in this case.

**E. Administrative Stay**

At a minimum, Defendants request the Court to "stay the injunction long enough for Defendants to seek a longer stay from the Federal Circuit." (See Liown Defs.' Mem. at 27 [Doc. No. 168].) In Brady v. National Football League, the Eighth Circuit explained that the purpose of an "administrative stay is to give the court sufficient opportunity to consider the merits of the motion for a stay pending appeal." See 638 F.3d 1004, 1005 (8th Cir. 2011). In Brady, the Eighth Circuit granted an administrative stay for the sole purpose of allowing the court to further consider the merits of the underlying motion for a stay. See id. However, in dissent, Judge Bye explained that the "underlying purpose" of granting an administrative stay "is to address 'emergency situations.'" See id. (Bye, J., dissenting) (citing McClendon v. City of Albuquerque, 79 F.3d 1014, 1019 (10th Cir. 1996) (citing Arrow Transp. Co. v. S. Ry. Co., 372 U.S. 658, 662 n.4 (1963))).

Here, the parties have not presented an emergency situation meriting an administrative stay. Given Plaintiff's likelihood of success on the merits, the Court is reluctant to stay the case and permit Defendants to continue infringing the underlying

patents.  Therefore, the request for an administrative stay is denied.

## VII.   ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED THAT:**

1. Liown Defendants' Motion to Modify and to Stay the Preliminary Injunction Pending Reconsideration or Appeal [Doc. No. 166] is **GRANTED, in part,** and **DENIED, in part**, as detailed within this Order**.**

2. Plaintiff's Motion to Strike Memoranda of Law Filed in Violation of Local Rule 7.1 [Doc. No. 187] is **DENIED**.

3. The parties are ordered to show cause ten days from the date of this Order why the Order should not be unsealed, and to specify any portion warranting redaction.


Dated:  May 22, 2015                          s/Susan Richard Nelson_____
                                              SUSAN RICHARD NELSON
                                              United States District Judge