UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Luminara Worldwide, LLC,                          Civil No. 14-3103 (SRN/FLN)

        Plaintiff,

v.                                                **ORDER**

Liown Electronics Co. Ltd. et al.,

        Defendants.

_____

Courtland Merrill and Cory Olson for Luminara Worldwide, LLC.
Thomas Millikan, Joseph Reid, and Alan Carlson for Liown Electronics Co. Ltd. et al.
_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on March 21, 2016 on Defendants' motion to compel production of documents associated with Luminara's improperly withheld patent license with Flipo and for sanctions (ECF No. 396). For the reasons set forth below, Defendants' motion is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

**A.**    **Luminara's agreements with Flipo**

In late 2013 and early 2014, Flipo Group, Ltd. sold a flameless candle known as the Solare Virtual Flame (the "Virtual Flame candle"). Pl.'s Opp'n Mem. 4, ECF No. 417. According to Luminara, the Virtual Flame candle infringed the Disney patents-in-suit "by using a flame silhouette pivoting on a flame support element through a hole in the body." *Id.* Liown and Luminara were both aware of these candles, and Luminara took action to stop Flipo from selling the Virtual Flame candles. *See id.*; Olson Decl. Exs. 2 and 3, ECF No. 418.

Luminara's effort was eventually successful, and Flipo ceased the sale of Virtual Flame candles. ECF No. 417 at 5. In its place, Flipo began selling a new product, the 3D Solare Virtual

Flame Candle (the "3D Solare candle"). Luminara states that unlike the Virtual Flame candle, the 3D Solare "used a round flickering bulb in place of a flat flame silhouette." *Id.*; *see also* ECF No. 419, Ex. 5. According to Luminara, the design of the 3D Solare candle does not infringe the patents-in-suit.

Despite Flipo's change to the 3D Solare candle, QVC, a seller of Flipo's candles, still had Virtual Flame candles in its inventory. ECF No. 417 at 6. In order to prevent Flipo from restarting its manufacturing and selling of Virtual Flame candles, Flipo and Luminara entered into a "Memorandum of Understanding" ("MOU") on December 18, 2015, which was signed by Luminara's General Counsel and Flipo's CEO. Reid Decl. Ex. G, ECF No. 400. In the MOU, Luminara recited that it "believes that the Solare candles infringe one or more of the Disney patents." *Id.* at 1. The MOU also stated, in relevant part:

> 2.    Luminara agrees to release Flipo and its customer QVC from any and all liability from the sale of Solare candles currently in QVC's possession, subject to the following limitations and conditions:
>
> > 2.1.    This limited waiver only applies to the units of Solare candles documented in <u>Appendix A</u>, which are in QVC's inventory as of the Effective Date (the "QVC Inventory").
> >
> > 2.2.    This limited waiver applies only to sales of the Solare candles in the QVC Inventory by QVC.
> >
> > 2.3.    This limited waiver does not apply to manufacture, use, offers to sell, sales, import or expert of any product that is not included in the QVC Inventory, including but not limited to sales of Solare candles not in the QVC Inventory.
> >
> > 2.4.    This limited waiver does not constitute a license to any of the Disney patents or any other intellectual property rights of Luminara.
>
> 3.    As a condition of and consideration for this waiver, Flipo shall place in escrow within ten (10) days of the Effective Date of this Agreement the total sum of an amount equal to (a) USD $0.60 per unit in the QVC Inventory as

2

set forth in <u>Appendix A</u>; plus (b) USD $0.75 per unit in the QVC Inventory for the additional 4,680 units separately identified in <u>Appendix A</u>. This amount will be held by a third-party escrow agent until March 31, 2015 (the "Closing Date") and pursuant to the terms and conditions set forth in <u>Appendix B</u>. The third party escrow agent shall be selected by agreement of the Parties.

4.     On or before the Closing Date, the Parties will discuss and negotiate in good faith to reach an agreement regarding a future business relationship between the Parties, and have such relationship documented and signed. If the Parties fail to sign a separate agreement by the Closing Date, the escrowed funds set forth in <u>paragraph 3</u> shall be paid to Luminara. If distributed to Luminara, the escrowed funds shall be full consideration for the limited waiver of <u>paragraph 2</u>, which shall remain in effect.

*Id.* at 1–2 (emphasis in original). The MOU applied only to Virtual Flame candles in QVC's inventory, and Luminara retained the right to prevent Flipo from selling or manufacturing Virtual Flame candles that were not in QVC's inventory. *Id.* at 2. The MOU did not apply to 3D Solare candles.

As required by the MOU, Luminara and Flipo negotiated a subsequent "Waiver Agreement," which was signed by Luminara's CEO and Flipo's CEO on April 3, 2015. ECF No. 400, Ex. H. The Wavier Agreement stated, in relevant part:

2.     During the Term of this Agreement, Luminara agrees to waive its right to enforce any of the Disney Patents against Flipo as well as the Waived Parties (as defined below), subject to the following limitations and conditions:

2.1.     This limited waiver only applies to the Solare candles specifically described in <u>Appendix A</u> [the 3D Solare candles] as well as those other products as mutually agreed upon in writing from time to time (the "<u>Products</u>").

2.2.     This limited waiver applies to the manufacture, use, importation, sales or export of the Products only by Flipo to any of the Waived Parties, but not to any other customer, distributor or other person.

2.3.     This limited waiver is limited in scope to the manufacture, use, importation, sales or export of the Products by Flipo and the Waived

3

> Parties in the United States of America, and does not cover any action taken outside of the United States by Flipo and the Waived Parties.
>
> 2.4.    This limited waiver does not constitute a license or sublicense to any of the Disney Patents or any other intellectual property rights of Luminara.
>
> . . .
>
> 4.    As a condition of, and consideration for, this waiver, Flipo shall pay Luminara an ongoing waiver fee of 2% of Flipo's Net Sales (as defined below) of the Products to the Waived Parties (the "Waiver Fee"). . . .

*Id.* at 1–2 (emphasis in original). The Waiver Agreement, however, only applied to the non-infringing 3D Solare candles, and did not encompass the allegedly infringing Virtual Flame candles. *Id.* Flipo was not allowed to take any action to challenge the validity of the Disney Patents during the term of the Waiver Agreement, which remained in effect until March 31, 2016. *Id.* at 3.

## B.    Liown's discovery requests

On November 18, 2014, Defendants served Request for Production No. 28, which sought "[a]ll documents that constitute, discuss, refer, or relate to any grant of rights in or to the Disney Patents-in-Suit, including, without limitation, assignments, licenses, cross-licenses, joint development agreements, covenants, settlements, or releases in the Disney Patents-in-Suit." ECF No. 400, Ex. I. On December 23, 2014, Defendants served Interrogatory No. 27, which asked Luminara to "[i]dentify any license or agreement related to any Accused Product, or the Disney Patents-in-suit, entered into by, between and amongst any Luminara Parties, or any third party." *Id.* Ex. K. In Defendants' deposition notice to Luminara, Defendants included topics related to any licenses in the patents-in-suit. *Id.* Ex. N. Luminara never produced any information related to the MOU or the Waiver Agreement in any of its discovery responses or in deposition testimony.

## C.    Defendants' discovery of the Flipo agreements

According to Defendants, members of the artificial candle industry attend trade shows throughout the year to meet with and market their products to customers. Defs.' Mem. in Supp. 17, ECF No. 398. At a January 2016 trade show in Atlanta, GA, Liown's CEO Johnny Yang had a conversation with Flipo's CEO Jerry Phlippeau. *Id.* According to Defendants, Phlippeau indicated that he was following the results of Liown's *inter partes* review against Luminara's '166 patent because Flipo "had taken a license to that patent from Luminara." *Id.* This was the first Liown had heard of any license agreement between Luminara and Flipo.

On February 10, 2016, Defendants asked Luminara whether it had entered into a license with Flipo with respect to the patents-in-suit. ECF No. 400, Ex. R. Defendants also requested that any such license be produced immediately. *Id.* After hearing no response from Luminara, Defendants sent a follow-up email on February 16, 2016, again requesting information related to any Flipo license. *Id.*, Ex. S. Still hearing no response, Defendants sent another follow-up email on February 19, 2016. *Id.*, Ex. T. Defendants informed Luminara that if they did not receive a response by the end of February 19, Defendants would file a motion to compel. *Id.* Hearing no response from Luminara, Defendants began preparing to file their motion. On the evening of February 22, however, Luminara informed Defendants that it would produce the Flipo agreements the following day. *Id.*, Ex. U. Defendants received the MOU and the Waiver Agreement on the morning of February 23, 2016. *Id.*, Ex. V.

Upon receiving these documents, Defendants requested that Luminara also produce "all of the associated correspondence, drafts, documents related to any payments, and any other documents related to the Flipo license." *Id.*, Ex. EE. To date, Luminara has not produced any further documents. Defendants now request that the Court compel Luminara to produce all documents associated with

the Flipo agreements, reopen discovery to allow Defendants to investigate the facts surrounding these agreements, and sanction Luminara for withholding the Flipo agreements. ECF No. 398 at 34–35. Defendants seek the following specific sanctions: (1) preclude Luminara from seeking further injunctive relief in this case; (2) preclude Luminara from contradicting or otherwise challenging the propriety and applicability of the Flipo agreement or the 2% rate disclosed in the agreement at trial; (3) strike Luminara's expert opinions on patent infringement damages that are contradicted by the Flipo agreements; (4) preclude Luminara's expert from issuing any supplemental opinions accounting for the Flipo agreements; and (5) require Luminara to pay Defendants' costs and fees with respect to the investigation and motion practice that uncovered the Flipo license. *Id.* at 35.

## II. ANALYSIS

The Federal Rules of Civil Procedure allow a district court to issue sanctions "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e)." Fed. R. Civ. P. 37(c)(1). The Rule states if the party fails to provide such information, "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless." *Id.* In addition to, or instead of this sanction, the Court may order payment of the reasonable expenses caused by the failure, inform the jury of the party's failure, and impose other appropriate sanctions, including those listed in Rule 37(b)(2)(A)(i)–(vi). *Id.* Rule 37(b)(2)(A) outlines the following possible sanctions: (1) directing that designated facts be taken as established for purposes of the action; (2) prohibiting the disobedient party from supporting or opposing designated claims or defenses; (3) striking pleadings; (4) staying further proceedings; (5) dismissing the action; or (6) rendering a default judgment against the disobedient party. Fed. R.

Civ. P. 37(b)(2)(A)(i)–(vi).

First, the Court concludes that Luminara's contracts with Flipo were, for all intents and purposes, licenses. The Federal Circuit has expressly held that "a non-exclusive patent license is equivalent to a covenant not to sue." *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009); *see also Spindelfabrik Suessen-Schurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1081 (Fed. Cir. 1987) ("[A] patent license agreement is in essence nothing more than a promise by the licensor not to sue the licensee."). Here, under the terms of the MOU and the Waiver Agreement, Luminara released Flipo from any and all liability from selling certain flameless candles. *See* ECF No. 400, Exs. G and I. In other words, Luminara agreed that it would not sue Flipo for selling potentially infringing candles. The fact that Luminara did not characterize these agreements as "licenses" does not alter their purpose.

In discovery, Defendants sought "[a]ll documents that constitute, discuss, refer, or relate to any grant of rights in or to the Disney patents-in-suit, including, without limitation, assignments, licenses, cross-licenses, joint development agreements, covenants, settlements, or releases in the Disney Patients-in-Suit." ECF No. 398 at 9. The MOU applied to Virtual Flame candles, which Luminara claims infringe the patents-in-suit. Although the MOU did not grant Flipo the right to practice the Disney patents, it explicitly released Flipo from any liability for infringement of the Disney patents. The Court concludes that the MOU should therefore have been disclosed by Luminara in response to this discovery request. Luminara must also disclose any relevant documents related to the MOU that are responsive to Defendants' Request for Production No. 28.

It is clear, however, that the Waiver Agreement only applied to 3D Solare candles. *See* ECF

No. 400, Ex. I. Luminara does not contend that the 3D Solare candles practice the Disney patents. The Waiver Agreement is therefore not relevant to Defendants' discovery requests.

Given that Luminara should have disclosed the MOU prior to February 2016, the Court turns to whether Defendants' requested sanctions are appropriate. After reviewing the record, the Court concludes that the majority of Defendants' requested sanctions are not proportional to Luminara's failure to produce documents related to the MOU, especially in light of the fact that this case has been consolidated with the RAZ actions. Although Defendants argue that they have been prejudiced by Luminara's failure to disclose relevant information, the Court finds that much of their asserted prejudice is overstated. Defendants received the MOU prior to their deadline to file their rebuttal expert report. Indeed, Defendants' expert included an analysis of the MOU and Waiver Agreement in his report. Defendants also had the MOU prior to the deposition of Luminara's damages expert, and they were free to cross examine him regarding his damages calculations. Defendants also have this information well ahead of trial. At trial, they are free to challenge Luminara's expert's opinion on damages and a reasonable royalty.

Nevertheless, it is clear that Luminara would never have produced the Flipo agreements if Defendants had not requested them after Yang's chance encounter with Flipo's CEO. Luminara must therefore reimburse Defendants for their costs and fees that were reasonably expended in having to investigate and request the Flipo agreements. Defendants are instructed to submit an affidavit to this Court within fourteen (14) days of the date of this Order indicating the expenses and fees it incurred in having to investigate and request the Flipo agreements. Such affidavit should provide the attorneys' rates and hours worked. The Court will then issue a subsequent Order as to the award of fees and expenses at a later date.

Defendants are not, however, entitled to a reimbursement of their costs and fees in having to bring this motion, as the relief sought by the motion is largely denied. The Court is satisfied that Luminara is sufficiently sanctioned for its conduct by having to pay Defendants their costs and fees in investigating and requesting the Flipo agreements.

### III. ORDER

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' motion to compel and for sanctions (ECF No. 396) is **GRANTED in part** and **DENIED in part** as follows:

A.     To the extent Defendants seek documents related to the MOU that are responsive to Defendants' Request for Production No. 28, the motion is **GRANTED**.

B.     To the extent Defendants seek the reimbursement of their costs and fees that they incurred in having to investigate and request the Flipo agreements, the motion is **GRANTED**. Defendants are instructed to submit an affidavit to the Court within fourteen (14) days of the date of this Order indicating the expenses and fees it incurred in investigating and requesting the Flipo agreements. Such affidavit should provide the attorneys' rates and hours worked. The Court will then issue a subsequent Order as to the award of fees and expenses at a later date. Defendants are not, however, awarded any fees or expenses related to the costs associated with filing the present motion for sanctions.

C.     In all other respects, the motion is **DENIED**.


DATED: May 18, 2016                                    *s/Franklin L. Noel*
                                                       FRANKLIN L. NOEL
                                                       United States Magistrate Judge

9