# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Luminara Worldwide, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Liown Electronics Co. Ltd. et al.,<br><br>Defendants. | Case No. 14-cv-03103 (SRN/FLN)<br><br><br><br>**MEMORANDUM OPINION AND ORDER**<br><br>**[FILED UNDER SEAL]** |
| Shenzhen Liown Electronics Co. Ltd. et al.,<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>Luminara Worldwide, LLC, et al.,<br><br>Counterclaim Defendants. | |

Courtland C. Merrill, Daniel R. Hall, Joseph W. Anthony, Cory D. Olson, Steven C. Kerbaugh, Steven M. Pincus, Anthony Ostlund Baer & Louwagie P.A., 90 South Seventh Street, Suite 3600, Minneapolis, Minnesota 55402, Jon E. Wright, Sterne Kessler Goldstein & Fox, 1100 New York Avenue Northwest, Suite 600, Washington, District of Columbia 20005, Ryan S. Dean, Fish & Tsang LLP, 2603 Main Street, Suite 1000, Irvine, California 92614, and Sean P. DeBruine, Kilpatrick Townsend & Stockton LLP, 1080 Marsh Road, Menlo Park, California 94025, for Plaintiff and Counterclaim Defendants.

Alan G. Carlson, Jonathan D. Carpenter, Peter Kohlhepp, Tara C. Norgard, Carlson Caspers Vandenburgh Lindquist & Schuman P.A., 225 South Sixth Street, Suite 4200, Minneapolis, Minnesota 55402, Joseph P. Reid, Patrick J. McKeever, Thomas N. Millikan, Yun L. Lu, Perkins Coie LLP, 11988 El Camino Real, Suite 350, San Diego, California 92130, and Kenneth J. Halpern, Perkins Coie LLP, 3150 Porter Drive, Palo Alto, California 94304, for Defendants and Counterclaim Plaintiffs.

SUSAN RICHARD NELSON, United States District Judge

## I.  INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for Summary Judgment [Doc. No. 501]. Although the motion seeks resolution of a number of matters, for various reasons the parties now agree that only two of those issues are ripe for decision at this time. (*See* Joint Status Report [Doc. No. 718] at 2.) Specifically, those issues are (1) breach of contract as to defendant Central Garden & Pet Co.; and (2) tortious interference with contract as to defendant Liown Electronics Co. Ltd.

Because the Court ultimately agrees with Defendants that issues of material fact exist regarding Plaintiff's claims, it will deny Plaintiff's motion as to both issues.

## II.  BACKGROUND

### A.  Relevant Facts

This wide-ranging litigation arises primarily from allegations brought by Plaintiff Luminara Worldwide, LLC ("Luminara") that Defendants have infringed four patents relating to flameless candle technology for which it is the exclusive licensee. (*See* Third Am. Compl. [Doc. No. 131] at ¶¶ 20-27.) Defendants have denied these allegations, and assert several counterclaims against Luminara, including a claim brought by Liown Electronics Co. Ltd. ("Liown") that Luminara, in its own right, infringes two patents held by Liown. (*See* Answer to Third Am. Compl. [Doc. No. 146] at ¶¶ 16, 17, 38-45.)

While the subject matter of this case thus primarily revolves around complicated patent issues, Luminara's present motion is limited to a much more discrete set of facts.

At the center of those facts are two distribution contracts entered into by Luminara with defendants Central Garden & Pet Co. ("GKI")[1] and The Light Garden, Inc. ("Light Garden").[2] The first agreement, with GKI, became effective on August 26, 2011, and was later replaced with a substantially similar amended agreement (the "GKI Agreement") on October 8, 2013. (*See* Norgard Decl., Exs. A & B.) As relevant to the present matter, the GKI Agreement contains the following provision barring GKI from purchasing products that are "confusingly similar" to those produced by Luminara:

> Confusingly Similar Products. During the term of this Agreement and for a period of 12 months after any termination or expiration of this Agreement, Distributor [GKI] will not manufacture or purchase from third parties for resale or other distribution, or act as a representative, distributor or agent for third parties, in connection with any products incorporating the [Luminara] Artificial Flame Technology, or that are confusingly similar with those products that incorporate or are used in conjunction with the [Luminara] Artificial Flame Technology, unless approved in advance in writing by Luminara.

(Norgard Decl., Ex. B at § 2.4.) The agreement further provides for a termination date of December 31, 2015. (*Id.* at § 10.1.) According to Luminara, sales to GKI pursuant to the GKI Agreement constituted 40% of its total sales by 2013. (Cain Decl. [Doc. No. 53] at ¶ 4.)

---

[1] The distribution contract was specifically with a (now-former) division of Central Garden & Pet Co., Bethlehem Lights/GKI. (*See* Norgard Decl. [Doc. No. 482], Ex. A.)

[2] Although Luminara originally commenced a breach of contract action against Light Garden in Minnesota state court, that matter has since settled. (*See* Pl.'s Mem. in Supp. of Mot. for Summ. J. [Doc. No. 503] ("Pl.'s Mem. in Supp.") at 14 n.5.) While Light Garden remains a defendant in this case as to Luminara's infringement claim, it is not a defendant on the breach of contract claim. (*See generally* Third Am. Compl.) Facts relating to its contract with Luminara remain relevant, however, as to the issue of Liown's alleged tortious interference with contract.

The second agreement (the "Light Garden Agreement"), with Light Garden, became effective on May 22, 2012. (*See* Cain Decl., Ex. B.) The Light Garden Agreement is similar in its terms to the GKI Agreement, and contains a "Confusingly Similar Products" provision that is nearly identical to the same provision in the GKI Agreement.[3] It also contains a provision that, in part "strictly prohibit[s Light Garden from purchasing Products [Luminara candles using its Artificial Flame Technology], or any other products that incorporate the Artificial Flame Technology, from any party other than Luminara." (*Id.* at §§ 1.08, 2.01.) The Light Garden Agreement contains a termination date of December 31, 2013. (*Id.* at § 10.01.)

For reasons that are disputed, in 2014, both distributors began sourcing artificial candle products from Luminara's chief competitor, Liown. (*See, e.g.*, Cain Decl. at ¶¶ 6, 7; Wenz Decl. [Doc. No. 523].) Luminara accuses Liown of purposely contacting GKI and Light Garden to induce them to switch suppliers. (*See* Pl.'s Mem. in Supp. at 9-11.) In particular, it contends that in June 2014, Liown approached GKI and offered it an exclusive supply agreement, which "directly conflicted" with GKI's obligations under the GKI Agreement. (*See id.* at 9 (citing Merrill Decl. [Doc. No. 504], Ex. C).) GKI proved

---

[3] The relevant provision of the Light Garden Agreement reads as follows:

> <u>Confusingly Similar Products</u>. During the term of this Agreement and for a period of 12 months after any termination or expiration of this Agreement, Distributor will not manufacture or purchase from third parties for resale or other distribution, or act as a representative, distributor or agent for third parties, in connection with any products that are confusingly similar with [Luminara's] Artificial Flame Technology, unless approved in advance in writing by Luminara.

(Cain Decl., Ex. B at § 2.04.)

receptive to Liown's proposal, and in September 2014 began purchasing Liown's "Torchier" candle, which Luminara contends is "confusingly similar" to its own products. (*See id.* at 9-10; *see also* Merrill Decl., Exs. D-E, U.)

Likewise, Luminara alleges that once Liown learned that Light Garden was a Luminara distributor, it attempted to "cut Luminara out of the deal" by establishing its own distribution agreement with Light Garden. (*See id.* at 10.) By June 30, 2014, Light Garden had entered into a manufacturing and distribution arrangement with Liown, and by October 2014, had begun purchasing flameless candles from Liown. (*See* Merrill Decl., Ex. F.; Cain Decl. at ¶ 7.) According to Luminara, Liown was well aware that GKI and Light Garden were under contract with Luminara at the time it approached them, but proceeded to do so anyway. (*See* Cain Decl. at ¶ 10; Merrill Prelim. Inj. Decl. [Doc. No. 55], Ex. 30.)

While Defendants do not dispute that they entered into distribution contracts in 2014, they present markedly different versions of how those contracts came about. Most notably, GKI contends that it was Luminara that originally introduced it to Liown, and that, with Luminara's "knowledge and encouragement," GKI started working directly with Liown on non-moving flame candle products. (*See* Defs.' Mem. in Opp. to Mot. for Summ. J. [Doc. No. 520] ("Defs.' Mem. in Opp.") at 52.) According to GKI, it was these non-moving flame candles that were the subject of the agreement Liown and GKI were discussing in the summer of 2014. (*See* Second Norgard Decl. [Doc. No. 521], Ex. S at 50:6-18; Wenz Decl. ¶ 6.) Picking up the thread, Liown asserts that it was GKI and Light Garden—fed up with poor service from Luminara—who first pursued a distribution

agreement with it.  (*See* Wenz Decl. at ¶¶ 4-5, 7-9; Second Norgard Decl., Exs. EE, FF.) It further argues that Luminara's evidence shows—at most—that Liown knew GKI and Light Garden had contracts with Luminara at the time it began its own relationship with those companies, not that GKI and Light Garden were in any way restricted from doing business with Luminara's competitors.  (*See* Defs.' Mem. in Opp. at 57.)  Taken on the whole, Liown contends that Luminara has not presented evidence sufficient to show, as a matter of law, that Liown tortiously interfered with Luminara's contracts with GKI and Light Garden.  (*Id.* at 60.)

     **B.**     **Procedural History**

Luminara brought suit against Liown on August 5, 2014, and added GKI and Light Garden as defendants on January 14, 2015.  (*See* Compl. [Doc. No. 1]; Second Am. Compl. [Doc. No. 88].)  The parties filed various cross-motions for summary judgment in early 2016, and a hearing was held to consider those motions on May 20, 2016.  (*See* Def.'s Mot. for Partial Summ. J. [Doc. No. 479]; Defs.' Mot. for Summ. J. [Doc. No. 485]; Pl.'s Mot. for Summ. J.; Minute Entry [Doc. No. 561].)  A dispute soon arose, however, regarding the status of one of Luminara's expert witnesses, which stretched through the summer and fall.  *See generally Luminara Worldwide, LLC v. Liown Elecs. Co.*, No. 14-cv-3103 (SRN/FLN), 2016 WL 6774229 (D. Minn. Nov. 15, 2016).  The ultimate resolution of the matter was that Luminara decided to withdraw the expert witness, casting doubt on the propriety of deciding a number of issues raised in the motions for summary judgment—most notably Luminara's motion regarding Liown's alleged infringement of Luminara's patents.  In response to these concerns, and at the

Court's direction, the parties produced a joint status report that concluded, in relevant part, that only those portions of Luminara's motion relating to breach of contract and tortious interference were ripe for disposition at this time. (*See* Joint Status Report at 1-2.) In line with the parties' representations, the Court has chosen to address these two matters immediately.

## III.   DISCUSSION

### A.   Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it may affect the outcome of the lawsuit. *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, 812 F.3d 701, 707 (8th Cir. 2016). Likewise, an issue of material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of establishing a lack of genuine issue of fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the Court must view the evidence and any reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In responding to a motion for summary judgment, however, the nonmoving party may not rest on mere allegations or denials, but must "demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

### B.   Breach of Contract

In Minnesota, a party alleging breach of contract bears the burden of proving three elements: (1) the formation of a contract, (2) the performance of conditions precedent by the plaintiff, and (3) the breach of the contract by the defendant. *See Zinter v. Univ. of Minn.*, 799 N.W.2d 243, 245 (Minn. Ct. App. 2011). Here, the parties primarily contest the question of whether factual issues exist precluding summary judgment as to the third element. (*See* Defs.' Mem. in Opp. at 54-56.)

A close reading of the "Confusingly Similar Products" provision of the GKI Agreement reveals that GKI could have breached the contract in two distinct ways. First, the provision bars GKI from manufacturing or purchasing any products incorporating Luminara's "Artificial Flame Technology." (*See* Norgard Decl., Ex. B. at § 2.4.) The GKI Agreement defines Artificial Flame Technology to mean "that certain technology, Confidential Information, and Intellectual Property that relates to creating an artificial flickering flame effect . . . ." (*Id.* at § 1.2.) The agreement further defines "Intellectual Property" to include, *inter alia*, patents. (*Id.* at § 1.8.) Based on this definition, the parties apparently agree—and the Court concludes—that if GKI manufactured or purchased products that infringed Luminara's patents, it would be in breach of the GKI Agreement. (*See* Defs.' Mem. in Opp. at 54; Pl.'s Mem. in Supp. at 9, 34.)

Second, the GKI Agreement bars GKI from manufacturing or purchasing any products that are "confusingly similar with those products that incorporate or are used in conjunction with the Artificial Flame Technology . . . ." (*See* Norgard Decl., Ex. B. at § 2.4.) Under this provision, it is clear that if GKI purchased artificial flame candles from Liown that were "confusingly similar" to Luminara's products, it would also be in

8

breach. Because a product presumably may be confusingly similar to a Luminara candle without infringing a Luminara patent, this second basis for breach is broader than the first.

For procedural reasons, Luminara's first argument—that GKI is in breach of contract because the flameless candles it purchased from Liown infringe Luminara's patents—must be disposed of summarily. For obvious reasons, the Court cannot say as a matter of law that GKI has breached this provision without first determining whether Liown's candle products infringe Luminara's patents. While Luminara's original motion contained a lengthy section arguing the issue of infringement, that portion is no longer before the Court. (*See* Joint Status Report at 1-2.) Accordingly, the Court simply has no basis upon which to make a decision—one way or the other—regarding breach based on the issue of infringement. To the extent, therefore, that Luminara's motion for summary judgment relies on allegations that GKI purchased infringing product from Liown, it is denied without prejudice. If Luminara so wishes, it may refile this portion of its motion when it refiles its motion for summary judgment of infringement.

Luminara's second argument—that GKI breached the GKI Agreement by purchasing "confusingly similar" flameless candles from Liown—presents a trickier issue. Luminara argues that it has presented ample, indisputable evidence that the candle products purchased by GKI from Liown (particularly Liown's Torchier candle) are "confusingly similar" to its own products. In support it points to various emails sent by GKI employees describing Liown's candles as "knockoffs" of Luminara's products. (*See* Merrill Decl., Exs. A, B.) More pointedly, it cites to deposition testimony from two

9

employees of Light Garden, in which they concede that Liown and Luminara candles bear a close resemblance. (*See* Merrill Decl., Ex. Q ("Chin Dep.") at 50:13-14 (describing the two candles as "identical, to the naked eye"); Ex. R ("Elson Dep.") at 56:23-57:2 (admitting that the candles are "confusingly similar" to Light Garden's customers, although "not to the professional").)

GKI responds that despite Luminara's arguments, the term "confusingly similar" is inherently ambiguous, and thus its interpretation must be left to the jury. (*See* Defs.' Mem. in Opp. at 55 (citing *Marso v. Mankato Clinic, Ltd.*, 153 N.W.2d 281, 288 (Minn. 1967)).) It notes that despite the fact that several other terms in the GKI Agreement are carefully defined, there is no definition for "confusingly similar." (*See* Defs.' Mem. in Opp. at 55.) Without such a definition, GKI contends that there is no clear point of reference upon which to ground an assessment of the similarity or lack thereof of a competitor's product. (*See id.*) For instance, GKI notes that it sells products both to retailers and professionals, and that their standards for determining whether one item is similar to another will necessarily be distinct. In support of this argument, it points out that while Light Garden's corporate representative admitted that Liown's candle would be "confusingly similar" to a Luminara candle in the eyes of a customer, he carefully clarified that it would *not* be confusingly similar to a professional. (*See* Elson Dep. at 56:23-57:2.) Finally, GKI notes that Luminara's own expert, Dr. Stuart Brown, admitted that "there will always be a possibility for reasonable minds to disagree on the qualitative nature of what they're seeing" when evaluating the candles at issue here. (*See* Second Norgard Decl., Ex. CC at 67:2-16.) Taken as a whole, GKI argues that there is simply

too much ambiguity regarding what constitutes a "confusingly similar" product to allow for summary judgment on the matter of breach.  (*See* Defs.' Mem. in Opp. at 54-56.)

In analyzing the parties' positions, the Court is guided by several important legal guideposts.  First, the construction and effect of a contract are questions of law.  *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn. 1979).  Where there is ambiguity regarding that construction, however, a question of fact exists for the jury.  *See id.*; *see also Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346-47 (Minn. 2003).  Thus, as an initial matter of construction, the Court must first make a determination whether a provision is ambiguous.  *Denelsbeck*, 666 N.W.2d at 346.  If the provision is susceptible to more than one construction, it is ambiguous, and summary judgment is improper.  *See Republic Nat'l Life Ins. Co. v. Lorraine Realty Corp.*, 279 N.W.2d 349, 354 (Minn. 1979).

In light of these principles, the Court concludes that the meaning of "confusingly similar" is sufficiently ambiguous that a fact issue exists for determination by a jury.  Because the contract provides no definition of the term, the Court looks to the plain meaning of the phrase in ascertaining its significance.  *See Knudsen v. Transp. Leasing/Contract, Inc.*, 672 N.W.2d 221, 223 (Minn. Ct. App. 2003).  Merriam-Webster's Dictionary defines "similar" to mean "having characteristics in common, strictly comparable," and "alike in substance or essentials."  *Merriam-Webster's Collegiate Dictionary* 1093 (10th ed. 1999).  It further defines "confusing" (as relevant to this matter) as "to fail to differentiate from an often similar or related other."  *Id.* at 243.

Taken together, these definitions suggest that a product that is "confusingly similar" to another is one that is largely indistinguishable in substance or essentials from that other.

The problem, however, is that while this exercise provides a definition for the term, it tells the Court nothing about who the parties' envisioned *applying* that definition. Defendants are correct that when dealing with intricate products, many aspects of which are minute and impose only incremental change on the overall structure, there can be no uniform understanding of similarity. As Luminara's own expert notes, "reasonable minds" can disagree regarding what aspects of a device must change before it becomes (or is no longer) similar to another. By way of illustration, is a candle with a wax body "confusingly similar" to one with a plastic body? What if the flame mechanism of one moves in only two axes, while the other moves in four? And finally, could an artificial candle with a fixed but flickering flame element be "confusingly similar" to one with a moveable flame? It seems apparent to the Court that reasonable minds may differ on these questions, or on how many such differentiations are necessary before a candle is no longer similar to another. Accordingly, because whether certain products are "confusingly similar" to others contains inherent ambiguity, unresolved by the contract itself, a fact question exists for decision by a jury. Thus, Luminara's motion as to breach of contract must be denied.

### C.   Tortious Interference with Contract

The Court's determination that a fact issue exists regarding breach of contract necessarily forecloses summary judgment on Luminara's tortious interference with contract claim. Under Minnesota law, that cause of action requires proof of five

elements: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages. *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 362 (Minn. 1998). Implicit in the third element is the requirement that the plaintiff demonstrate the existence of a breach. *See, e.g.*, *Sec. Sav. Bank v. Green Tree Acceptance, Inc.*, 739 F. Supp. 1342, 1348 (D. Minn. 1990). Because the Court has concluded that a fact issue exists sufficient to preclude a finding of breach of the underlying contracts,[4] a fact issue likewise exists as to tortious interference with contract. Accordingly, Luminara's motion as to this count must also be denied.

## IV. ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. As to Plaintiff's claim for breach of contract, Plaintiff's Motion for Summary Judgment [Doc. No. 501] is **DENIED WITHOUT PREJUDICE** insofar as it alleges breach based on the issue of infringement, and **DENIED** insofar as it alleges breach based on the issue of "confusingly similar" products;

2. Plaintiff's Motion for Summary Judgment [Doc. No. 501] is **DENIED** as to Plaintiff's claim for tortious interference with contract; and

3. The parties are **ORDERED TO SHOW CAUSE** within ten days of the date of this Order why the Order should not be unsealed, and to specify any portion warranting redaction.

---

[4] Although the Court's analysis on the issue of breach was limited to the GKI Agreement, it applies equally to the Light Garden Agreement, which also contains the "Confusingly Similar Products" provision and definition. (*See* Cain Decl., Ex. B. at § 2.04.)

Dated: February 27, 2017                              <u>s/Susan Richard Nelson</u>
                                                      SUSAN RICHARD NELSON
                                                      United States District Judge