**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Luminara Worldwide, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Liown Electronics Co. Ltd. et al.,<br><br>Defendants. | Case No. 14-cv-03103 (SRN/FLN)<br><br><br><br><br><br><br>**MEMORANDUM OPINION<br>AND ORDER**<br><br>**[FILED UNDER SEAL]** |
| Shenzhen Liown Electronics Co. Ltd. et al.,<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>Luminara Worldwide, LLC, et al.,<br><br>Counterclaim Defendants. | |

Courtland C. Merrill, Daniel R. Hall, Joseph W. Anthony, Cory D. Olson, Steven C. Kerbaugh, Steven M. Pincus, Anthony Ostlund Baer & Louwagie P.A., 90 South Seventh Street, Suite 3600, Minneapolis, Minnesota 55402, Jon E. Wright, Sterne Kessler Goldstein & Fox, 1100 New York Avenue Northwest, Suite 600, Washington, District of Columbia 20005, Ryan S. Dean, Fish & Tsang LLP, 2603 Main Street, Suite 1000, Irvine, California 92614, and Sean P. DeBruine, Kilpatrick Townsend & Stockton LLP, 1080 Marsh Road, Menlo Park, California 94025, for Plaintiff and Counterclaim Defendants.

Alan G. Carlson, Jonathan D. Carpenter, Peter Kohlhepp, Tara C. Norgard, Carlson Caspers Vandenburgh Lindquist & Schuman P.A., 225 South Sixth Street, Suite 4200, Minneapolis, Minnesota 55402, Joseph P. Reid, Patrick J. McKeever, Thomas N. Millikan, Yun L. Lu, Perkins Coie LLP, 11988 El Camino Real, Suite 350, San Diego, California 92130, and Kenneth J. Halpern, Perkins Coie LLP, 3150 Porter Drive, Palo Alto, California 94304, for Defendants and Counterclaim Plaintiffs.

SUSAN RICHARD NELSON, United States District Judge

## I. INTRODUCTION

This matter comes before the Court on Defendant Central Garden & Pet Co.'s Motion for Partial Summary Judgment [Doc. No. 479]. Defendant requests that the Court enter summary judgment that Plaintiff Luminara Worldwide, LLC is not entitled to the recovery of lost profit damages on its claim for breach of contract, because such damages are consequential damages, and the contract between the parties expressly precludes recovery of consequential damages. Because the Court concludes, with one limited possible exception, that the lost profits at issue here are properly classified as direct damages, Defendant's motion is denied.

## II. BACKGROUND

The facts relevant to disposition of this particular motion are undisputed, and may be briefly stated. Plaintiff Luminara Worldwide, LLC ("Luminara") is the exclusive licensee of a number of patents that, together, teach improved techniques for making the light from artificial candles flicker like the flames of real candles. *See Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1346 (Fed. Cir. 2016). On August 26, 2011, Defendant Central Garden & Pet Co.'s former division, Bethlehem Lights/GKI ("GKI"), entered into an agreement (the "Distribution Agreement") to act as a distributor for products encompassing Luminara's candle technology. (*See* Norgard Decl. [Doc. No. 482], Ex. A.) Specifically, the Distribution Agreement granted GKI the right to purchase Luminara products, incorporate those products into "Combined Products," and sell those Combined

Products within a defined territory. (*See id.* at §§ 1.05, 1.11, 2.01.) The Distribution Agreement also contained a provision providing that, for the term of the agreement and for twelve months thereafter, GKI would not manufacture, purchase, or distribute products that were "confusingly similar" to those designed by Luminara. (*See id.* at § 2.04.) Finally, with respect to consequential damages, the agreement provided as follows:

> Consequential Damages. Notwithstanding anything in this agreement to the contrary, except with respect to each party's indemnification obligations and/or a misappropriation by one party of the other party's intellectual property or confidential information, neither party hereto shall be liable to any other party pursuant to this agreement for amounts representing indirect, special, incidental, consequential, or punitive damages of the other party arising from the performance or breach of any terms of this agreement even if such party has been made aware of the possibilities of damages.

(*Id.* at § 7.3.)

Although the Distribution Agreement contained no explicit requirement that GKI purchase any product from Luminara, it was replaced in late 2013 by the Amended and Restated Distributor Agreement (the "Amended Agreement"), which, among other changes, included a "minimum purchase commitment" provision. (*See* Norgard Decl., Ex. B at § 3.2.) This provision obligated GKI to "continuously increase its purchases of Luminara Products during the Term of this Agreement." (*Id.*) The Amended Agreement also extended the contract term through the end of 2015. (*Id.* at § 10.1.) The provisions of the Distribution Agreement barring GKI from purchasing "confusingly similar" products from Luminara's competitors and excluding liability for consequential damages remained undisturbed, however. (*Compare* Norgard Decl., Ex. A at §§ 2.04, 7.03 *with* Norgard Decl., Ex. B. at §§ 2.4, 7.3.)

For reasons that are both disputed and not relevant to this particular motion, in late 2014, GKI began sourcing candles similar to those manufactured by Luminara from Luminara's competitor, Liown Electronics Co. Ltd. ("Liown").[1] In response, Luminara filed suit against GKI, alleging (among other things) breach of contract. (*See* Third Am. Compl. [Doc. No. 131] at ¶¶ 51-59.) It now contends that it is entitled to recover approximately $2.7 million in lost profits from sales of candles to GKI that would have occurred if GKI had honored the parties' agreements. (*See* Merril Decl. [Doc. No. 504], Ex. O at 115-16.)

GKI responds, in the present motion, that Luminara simply cannot recover its lost profit damages because those damages are expressly made unrecoverable by the terms of the parties' agreements. (*See* Def.'s Mem. in Supp. of Mot. for Summ. J. [Doc. No. 481] at 10.) In support, it notes that § 7.3 of the Amended Agreement (§ 7.03 in the Distribution Agreement) limits monetary damages to direct damages only, and disclaims consequential damages. (*Id.*) Because any lost profits suffered by Luminara do not arise "naturally" or "directly" from the alleged breach, but rather as its "contemplated . . . probable result," GKI contends that they are consequential as a matter of law and hence barred by the contract. (*Id.* at 6, 8 (quoting *Kleven v. Geigy Agric. Chems.*, 227 N.W.2d 566, 569-70 (Minn. 1985)).)

Luminara raises two distinct counter-arguments. First, it contends that the lost profits at issue are "undoubtedly direct damages" because one of the benefits of its bargain with GKI was the contractual provision prohibiting GKI from purchasing

---

[1] Liown is also a defendant in this litigation.

4

artificial candles from Luminara's competitors.  (Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. [Doc. No. 529] at 8.)  Luminara argues that if GKI had merely adhered to this provision, it necessarily would have turned to Luminara to fill its demand for candles. (*Id.*)

Alternatively, Luminara argues that even if the lost profits are determined to be consequential damages, GKI's purchase of candles from Liown amounted to a "misappropriation" of Luminara's patented intellectual property.  (*Id.* at 11-13.)  Because the Amended Agreement expressly excepts from its blanked prohibition on consequential damages those damages arising from misappropriation of intellectual property, Luminara contends that it should still be able to recover its lost profits here.  (*Id.*)

### III.  DISCUSSION

#### A.  Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" only if it may affect the outcome of the lawsuit. *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, 812 F.3d 701, 707 (8th Cir. 2016).  Likewise, an issue of material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the burden of establishing a lack of genuine issue of fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the Court must view the evidence and any reasonable inference in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In responding

to a motion for summary judgment, however, the nonmoving party may not rest on mere allegations or denials, but must "demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

### B.   Lost Profits as Direct or Consequential Damages

As previously noted, Luminara raises two arguments as to why the lost profits it seeks should not be deemed irrecoverable due to the bar on consequential damages.[2] The first is that, in the context of the parties' contract, any lost profits are properly considered direct damages. Although the question is a close one, for the reasons that follow, the Court agrees.

As an initial matter, the Court notes that the Minnesota Supreme Court has not squarely addressed the question of whether lost profits are uniformly classified as either direct or consequential damages under Minnesota law. While other courts have occasionally made broad pronouncements one way or the other, *compare Moore v. Boating Indus. Ass'ns*, 745 F.2d 698, 717 (7th Cir. 1985) ("Lost profits are considered to be general or direct damages in a breach of contract case . . . .") *with Fishman Org., Inc. v. Frick Transfer, Inc.*, No. 11-cv-04598, 2013 WL 1655984, at *3 (E.D. Pa. Apr. 17, 2013) ("Lost profits are considered a form of consequential damages."), the majority view is plainly that

---

[2] Notably, neither party appears to question the enforceability of the bar on consequential damages, or whether, if the Court concludes that lost profits are unrecoverable as consequential damages, any issues exist regarding minimum adequate remedies. *See* Minn. Stat. § 336.2-719, cmt. 1 (observing that "it is of the very essence of a sales contract that at least minimum adequate remedies be available"); *Marvin Lumber and Cedar Co. v. Sapa Extrusions, Inc.*, 964 F. Supp. 2d 993, 1002 (D. Minn. 2013); *see also Whitesell Corp. v. Whirlpool Corp.*, 496 F. App'x 551, 554-55 (6th Cir. 2012).

the nature of lost profit damages depends on their role in the contract. *See, e.g.*, *SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827, 839 (10th Cir. 2016) (noting that lost profits can be either direct or consequential, depending on their nature); *EMS, Inc. v. Chegg, Inc.*, No. 8:11-cv-113, 2012 WL 5412956, at *4 (D. Neb. Nov. 6, 2012) (same); *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 2d 314, 322 (S.D.N.Y. 2009) (same); *DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 181 (Tex. App. 2012) (same). Thus, while it is tempting to look for a definitive answer that easily resolves the parties' dispute, the Court concludes that categorization of the lost profits at issue here requires deeper inquiry into the distinction between direct and consequential damages.

The Minnesota Supreme Court has defined "direct" damages to be those damages that "arise naturally in the usual course of things from the breach itself . . . ." *Despatch Oven Co. v. Rauenhorst*, 40 N.W.2d 73, 79 (Minn. 1949). In contrast, consequential damages are those that "do not arise directly according to the usual course of things from the breach of the contract itself, but are rather those which are the consequence of special circumstances known to or reasonably supposed to have been contemplated by the parties when the contract was made." *Id.* Several courts have summarized the difference by noting that direct damages cover losses arising from the contract itself, while consequential damages cover losses on other contracts or relationships. *See, e.g.*, *Cherokee Cty. Cogeneration Partners, L.P. v. Dynegy Mktg. and Trade*, 305 S.W.3d 309, 314 (Tex. App. 2009); *Bonanza Rest. Co. v. Wink*, No. S10C-10-018 RFS, 2012 WL 1415512, at *3 (Del. Super. Ct. Apr. 17, 2012), *aff'd*, 65 A.3d 616 (Del. 2013).

While this division is conceptually clear, in practice it can at times be hard to know where to draw the line. *See Kerr S.S. Co. v. Radio Corp. of Am.*, 157 N.E. 140, 141 (N.Y. 1927) (Cardozo, J.) ("There is need to keep in mind that the distinction is not absolute, but relative.  To put it in other words, damage which is general in relation to a contract of one kind may be classified as special in relation to another."). In the context of lost profits, courts have generally found damages to be direct when the profits themselves are the benefits of the plaintiff's bargain. *See, e.g.*, *Imaging Sys. Int'l, Inc. v. Magnetic Resonance Plus, Inc.*, 490 S.E.2d 124, 127 (Ga. Ct. App. 1997). Thus, for example, when a general contractor sues for expected profits from a breached construction contract, the lost profits are direct damages. *Id.* In contrast, if the defendant's breach caused the contractor to close shop, precluding him from performing work on other active contracts, the lost profits from those contracts would be consequential damages. *See Atl. City Assocs., LLC v. Carter & Burgess Consultants, Inc.*, 453 F. App'x 174, 179-80 (3d Cir. 2011).

At a more granular level, courts have tended to find lost profits arising from breach of "requirements" contracts to be direct damages, even where the purchaser made no explicit promise to buy any product from the seller. *See In re Conneaut Metalcasters Inc.*, No. 96-417, 1997 WL 560054, at *4 (6th Cir. Sept. 5, 1997) (noting that seller could recover "lost profits" but not "consequential damages" from breach of requirements contract); *see also Ace-Federal Reporters, Inc. v. Barram*, 226 F.3d 1329, 1331-32 (Fed. Cir. 2000); *Mannington Wood Floors, Inc. v. Port Epes Transp., Inc.*, 669 So.2d 817, 822-23 (Ala. 1995); *M&G Polymers USA, LLC v. Carestream Health, Inc.*, No. 07C-11-242 PLA, 2010 WL 1611042 (Del. Super. Ct. Apr. 21, 2010); *Fla. Min. & Materials Corp. v.*

8

*Standard Gypsum Corp.*, 550 So.2d 47, 48 (Fla. Dist. Ct. App. 1989). A requirements contract is defined "as a contract in which the seller promises to supply all the specific goods or services which the buyer may need during a certain period at an agreed price in exchange for the promise of the buyer to obtain his required goods or services exclusively from the seller." *Upsher-Smith Lab., Inc. v. Mylan Labs., Inc.*, 944 F. Supp. 1411, 1426 (D. Minn. 1996). The reasoning behind finding a seller's lost profits recoverable as direct damages in a breach of a requirements contract case is clear—the right to fill the buyer's needs, even if those needs are indeterminate, represents the seller's "benefit of the bargain." *See, e.g.*, *Mannington Wood Floors*, 669 So. 2d at 822.

In the present matter, the agreement between Luminara and GKI bears many of the hallmarks of a requirements contract.[3] Most notably of course, at least partially in return for Luminara's promise to supply artificial candles to GKI for distribution, GKI reciprocally promised not to manufacture, purchase, or distribute "confusingly similar" products from any other supplier. (*See* Norgard Decl., Ex. A at 2.04, Ex. B at 2.4.) This promise effectively committed GKI to fill all of its needs for artificial candles from Luminara.

GKI contests this interpretation of the agreement, arguing that there was never any requirement in the language of the contract that it purchase a single candle from Luminara—in its view, all it promised to do was *not* purchase candles from Luminara's competitors. (*See* Def.'s Mem. in Supp. of Mot. for Summ. J. at 13.) Accordingly, GKI

---

[3] The Court need not determine definitively whether the parties' agreement constituted a requirements contract, as the similarity alone is sufficient to guide this Court's conclusion that Luminara's lost profits are properly considered direct damages.

contends that Luminara was never guaranteed any candle sales even if GKI had abided by the terms of the contract. (*Id.*)

Strictly speaking, of course, GKI is correct. The parties' agreement does not explicitly require it to purchase from Luminara. But for a number of reasons the Court finds this distinction insufficient to vitiate the close resemblance of the agreement to a requirements contract. First, as a conceptual matter, there is no difference (except semantics) between a contract requiring one to fill his needs for a certain good exclusively from Seller, and one that bars the same individual from purchasing those goods from all companies *except* Seller. The result is the same—so long as the buyer has a need, he must source that need from Seller. Second, a valid requirements contract imposes no requirement that a buyer actually purchase the goods he has promised to exclusively source from Seller. Rather, all he promises is that, if he has a need, he will buy from Seller. *See, e.g.*, *Ace-Federal Reporters*, 226 F.3d at 1332 (Fed. Cir. 2000); *Lambert Corp. v. Evans*, 575 F.3d 132, 138 (7th Cir. 1978). Finally, it is not entirely accurate to say that GKI had no affirmative duty to purchase candles from Luminara. While it is true that the Distribution Agreement contained no purchase requirement, the Amended Agreement contained a "minimum purchase commitment" obligating GKI to "continuously increase its purchases of Luminara Products." (*See* Norgard Decl., Ex. B. at § 3.2.) Clearly, a commitment to "continuously increase" purchases implies a requirement to make some number of purchases, however small.

Taken on the whole, the Court thus finds that the agreement between GKI and Luminara closely resembles a requirements contract. Based on this resemblance, it is

persuaded that the same logic that impels courts to find lost profits in requirements contracts to be direct damages counsels the same result here. Simply put, by obtaining a limitation on GKI's right to purchase goods from competitors, Luminara obtained an expectancy that it would profit from any requirement GKI might have for artificial candles. When GKI nonetheless purchased candles from Liown, it denied Luminara the benefit of its bargain. While the amount of the lost profits incurred by Luminara may be debatable, those losses were the natural result of GKI's breach. *See Despatch Oven Co.*, 40 N.W.2d at 79.

Although the Court thus concludes that lost profits arising during the term of the parties' agreement are properly considered direct damages, a question remains whether lost profits arising *after* the agreement expired are also recoverable as direct damages. Based on the parties' filings, it is not clear to the Court whether Luminara seeks damages only for the period up to and including the date the contract expired (December 31, 2015), or for the twelve-month period following it, when GKI was also barred from purchasing artificial candles from Luminara's competitors. (*See* Norgard Decl., Ex. B. at § 10.1.) In the Court's view, the distinction matters. Of particular note, the Eighth Circuit has previously held that such post-agreement lost profits, coming on the heels of a requirements contract, are consequential damages. *See Porous Media Corp. v. Midland Brake, Inc.*, 220 F.3d 954, 961-62 (8th Cir. 2000) (applying Minnesota law).[4] Although the circuit court did not greatly elaborate on why it reached this conclusion, this Court finds a distinction between lost profits arising during the term of a requirements contract and those arising after to make

---

[4] Unfortunately, the Eighth Circuit did not have cause in *Porous Media* to discuss whether lost profit damages arising during the term of the agreement were direct or consequential.

conceptual sense. In particular, once the requirements period expires, a residual provision barring purchases from competitors is more akin to a non-compete agreement than a duty to purchase from the seller. Further, any additional purchases by the buyer from the seller would require the creation of a new contract. *See Cherokee Cty. Cogeneration Partners*, 305 S.W.3d at 309 (noting that one hallmark of consequential damages is that they cover losses on contracts additional to the one breached).

In light of this authority, the Court limits its holding that Luminara's lost profits are direct damages to those losses arising prior to termination of the agreement on December 31, 2015. Any lost profits sought by Luminara after that date are properly considered consequential damages.

### C. Luminara's "Misappropriation" Argument

Having concluded that at least most of the lost profit damages Luminara might seek in this action are direct damages, the Court arguably need not consider Luminara's alternative, "misappropriation" theory of recovery. Because it is unclear, however, whether Luminara seeks post-agreement, consequential damages, the Court will briefly examine whether the misappropriation argument serves to render those damages recoverable here. For the reasons that follow, the Court concludes that it does not.

As noted earlier, § 7.3 of the Amended Agreement (§ 7.03 in the Distribution Agreement) broadly disclaims the recovery of consequential damages, but contains a narrow exception for "misappropriation by one party of the other party's intellectual property . . . ." (Norgard Decl., Ex. B. at § 7.3). Luminara argues that by purchasing artificial candles from its competitors that—in its view—incorporate Luminara's patented

technology, GKI has "infringed on" that technology, and "thus misappropriated Luminara's intellectual property." (*See* Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. at 12.)

The Court finds this argument unconvincing. In effect, Luminara asks the Court to hold, as a matter of law, that purchase of a product accused of patent infringement is misappropriation of intellectual property. Though pressed to do so, Luminara has not identified a single case that supports this expansive position, and the Court's own research has not filled that omission. (*See* Hr'g Tr. [Doc. No. 576] at 77:4-15.) Luminara's argument is one for patent infringement, and though it may ultimately have a viable infringement claim against GKI, that claim cannot be read as establishing misappropriation of intellectual property for purposes of breach of contract.

## IV. CONCLUSION

For the reasons stated above, the Court concludes that Luminara's alleged lost profits arising during the term of the parties' agreement are direct damages. Accordingly, they are recoverable irrespective of the agreement's disclaimer of consequential damages. However, this holding does not extend to any post-agreement lost profits arising after December 31, 2015, which the Court finds to be consequential damages. Finally, the Court rejects Luminara's alternative argument that all lost profit damages resulting from GKI's purchase of competing artificial candles should be recoverable under the contract's exception for misappropriation of intellectual property.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion for Partial Summary Judgment [Doc. No. 479] is **DENIED**, except to the extent Plaintiff seeks lost profit damages arising after December 31, 2015; and

2.      The parties are **ORDERED TO SHOW CAUSE** within ten days of the date of this Order why the Order should not be unsealed, and to specify any portion warranting redaction.


Dated: February 27, 2017                              s/Susan Richard Nelson
                                                     SUSAN RICHARD NELSON
                                                     United States District Judge