# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Luminara Worldwide, LLC, | Case No. 14-cv-03103 (SRN/FLN) |
| Plaintiff, | |
| v. | |
| Liown Electronics Co. Ltd. et al., | |
| Defendants. | |
| | **MEMORANDUM OPINION AND ORDER** |
| Shenzhen Liown Electronics Co. Ltd. et al., | |
| Counterclaim Plaintiffs, | **[FILED UNDER SEAL]** |
| v. | |
| Luminara Worldwide, LLC, et al., | |
| Counterclaim Defendants. | |

Courtland C. Merrill, Daniel R. Hall, Joseph W. Anthony, Cory D. Olson, Steven C. Kerbaugh, Steven M. Pincus, Ariel O. Howe, Anthony Ostlund Baer & Louwagie P.A., 90 South Seventh Street, Suite 3600, Minneapolis, Minnesota 55402, Jon E. Wright, Sterne Kessler Goldstein & Fox, 1100 New York Avenue Northwest, Suite 600, Washington, District of Columbia 20005, and Ryan S. Dean, Fish & Tsang LLP, 2603 Main Street, Suite 1000, Irvine, California 92614, for Plaintiff and Counterclaim Defendants.

Alan G. Carlson, Jonathan D. Carpenter, Peter Kohlhepp, Tara C. Norgard, Carlson Caspers Vandenburgh Lindquist & Schuman P.A., 225 South Sixth Street, Suite 4200, Minneapolis, Minnesota 55402, Joseph P. Reid, Patrick J. McKeever, Thomas N. Millikan, Yun L. Lu, Perkins Coie LLP, 11988 El Camino Real, Suite 350, San Diego, California 92130, and Kenneth J. Halpern, Perkins Coie LLP, 3150 Porter Drive, Palo Alto, California 94304, for Defendants and Counterclaim Plaintiffs.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter comes before the Court on Defendants' Motion for Summary Judgment [Doc. No. 485].  The motion seeks resolution as a matter of law of six discrete issues that are not—by themselves—case-dispositive.  For various reasons, discussed at greater length below, the parties now agree that only four of those issues are ripe for decision at this time.  (*See* Joint Status Report [Doc. No. 718] at 1.)  As labeled by the Defendants, these four issues are: (1) whether claims 1 and 13 of U.S. Patent No. 8,696,166 (the "'166 patent") are anticipated by U.S. Patent No. 7,261,455 (the "'455 patent"); (2) whether Plaintiff Luminara Worldwide, LLC ("Luminara") should be held to the construction of the claim term "affixed" it successfully put forward before the U.S. Patent Trial and Appeal Board ("PTAB"); (3) whether two Luminara candle designs infringe U.S. Patent Nos. 8,789,986 (the "'986 patent") and 8,926,137 (the "'137 patent"); and (4) whether various "prior art" references put forward by Luminara actually qualify as prior art under former 35 U.S.C. § 102.[1]

The Court has carefully considered the parties' briefs, the record, and the case law relevant to these disparate issues.  Based on that consideration, and for the reasons stated herein, the Court will grant the Defendants' motion in part, and deny the motion in part.

## II.    BACKGROUND

_____

[1] 35 U.S.C. § 102 was substantially amended by the Leahy-Smith America Invents Act ("AIA"), enacted September 16, 2011.  *See* Pub. L. No. 112-29, 125 Stat. 284 (2011). However, because the claims at issue here have effective filing dates before March 16, 2013, the Court applies § 102 as it read prior to amendment.  *See U.S. Water Servs., Inc. v. Novozymes A/S*, 843 F.3d 1345, 1350 n.5 (Fed. Cir. 2016).

This litigation arises out of allegations that Defendants have infringed four patents (collectively, the "Luminara patents"), each of which is entitled "Kinetic Flame Device," for which Luminara is the exclusive licensee.[2]  (*See generally* Third Am. Compl. [Doc. No. 131].)  Together, the Luminara patents teach improved techniques for making the light from artificial candles flicker like the flames of real candles.[3]  *See Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1346 (Fed. Cir. 2016).  Whereas previous artificial candles had primarily relied on randomly energized colored lights or the use of a blowing device to oscillate the simulated flame—resulting in "relatively poor imitations of a real flame"—Luminara's technology uses "a drive mechanism that stimulates and/or perturbs a complex interaction between gravity, mass, electromagnetic field strength, magnetic fields, air resistance and light" to achieve a convincing reproduction of a conventional combustion candle.  ('355 patent at 1:55-2:26.)

The Luminara patents claim priority to 2008.  *Luminara*, 814 F.3d at 1346.  In January 2010, Luminara's predecessor, Candella, LLC ("Candella") displayed a number of prototype candles at the Consumer Electronics Show ("CES") in Las Vegas.  Shortly after the show concluded, Candella approached Defendant Liown Electronics Co. Ltd ("Liown") to manufacture candles based on its designs.  *Luminara*, 814 F.3d at 1346.

---

[2] In addition to the '166 patent, the patents licensed by Luminara are U.S. Patents Nos. 7,837,355 (the "'355 patent"), 8,070,319 (the "'319 patent"), and 8,534,869 (the "'869 patent").

[3] The Luminara patents were developed—and are owned—by Disney Enterprises, Inc., a wholly-owned subsidiary of The Walt Disney Company.  *See Luminara*, 814 F.3d at 1346.  Disney Enterprises licensed the rights to its kinetic flame technology to Luminara's predecessor-in-interest, Candella, LLC, in 2008.  *Id.* The license agreement has been amended several times to increase the rights afforded to Luminara, and remains in effect.  *See id.*

Although the parties engaged in extensive negotiations and Liown worked to prepare the designs for production, the relationship soon broke down. *Id.* On June 28, 2010, Liown filed a Chinese patent application for a kinetic flame device similar to that covered by the Luminara patents. *Id.* Whether the application was based on confidential information about Luminara's technology is a matter of dispute. *Id.* Nonetheless, Liown began selling flameless candles in the United States in 2012. *Id.*

In response, Candella brought suit in this district on November 2, 2012, claiming patent infringement. *See Candella, LLC v. Liown Elecs. Co.*, No. 12-cv-2803 (PJS/JJK) (D. Minn. 2012). The parties settled the following year—Liown agreed to stop selling infringing candles in the United States, and in return Candella restarted negotiations directed toward establishing a manufacturing relationship. *Luminara*, 814 F.3d at 1347. The process proved unfruitful, however, and on August 5, 2014—days after receipt of the '986 patent from the U.S. Patent and Trademark Office—Liown notified Luminara that it would no longer comply with the terms of the settlement agreement. *Id.* Candella brought the present suit against Liown and the other named defendants that same day, alleging patent infringement, trademark infringement, and tortious intereference. (*See generally* Third Am. Compl.) Defendants have since counterclaimed, alleging that Luminara has infringed Liown's '986 and '137 patents, and seeking (among other things) declarations of non-infringement and invalidity as to the Luminara patents. (*See* Defs.' Answer to Third Am. Compl. [Doc. No. 146] at 25-28.)

Shortly after suit was filed, Luminara moved for a preliminary injunction based on Liown's alleged infringement of claim 1 of the '166 patent, and Liown's alleged tortious

interference with Luminara's customers. (*See generally* Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. [Doc. No. 52].) This Court granted the motion, finding that Luminara had established a substantial likelihood of success on the merits of its infringement action, and that Defendants had failed to raise substantial doubt about the validity of the '166 patent. *See Luminara Worldwide, LLC v. Liown Electronics Co.*, No. 14-cv-3103 (SRN/FLN), 2015 WL 1967250, at *14 (D. Minn. May 1, 2015). As relevant to the latter point, the Court concluded that the prior art '455 patent did not anticipate claim 1 of the '166 patent because the mechanism of the '455 patent was unable to pivot in the same chaotic and multi-directional manner as the mechanism of the '166 patent. *Id.* at *12. In the Court's view, the gimbal structure utilized by the '455 patent, which limited movement to two axes, displayed only rhythmic or metronomic motion, rather than the unpredictable flickering effect produced by the wire-based structure of the '166 patent. *Id.* Thus, the Court concluded that the '455 failed as a matter of law to anticipate at least one limitation of claim 1 of the '166 patent. *Id.* Because the Court concluded that Luminara was entitled to a preliminary injunction on the basis of alleged infringement, it did not reach the alternate ground of tortious interference. *Id.* at *5.

Defendants appealed the Court's preliminary injunction order, and the Federal Circuit reversed. As will be discussed in greater depth below, the circuit court found— contrary to the Court's determination—that a substantial question existed as to whether the '455 patent anticipates claim 1 of the '166 patent. *Luminara*, 814 F.3d at 1352. In particular, the circuit court concluded that while the '166 patent does require chaotic pivoting, it contains no requirements as to movement. *Id.* at 1354. Because the '455

5

patent teaches pivoting in two axes and that the flame reflector be "articulated by a natural and chaotic external or internal force," the Federal Circuit concluded that a preliminary injunction was unwarranted. *Id.*

Upon remand, the parties proceeded to file separate motions for summary judgment, and a hearing was held to consider both motions on May 20, 2016. (*See* Defs.' Mot. for Summ. J. [Doc. No. 485]; Pl.'s Mot. for Summ. J. [Doc. No. 501]; Minute Entry [Doc. No. 561].) A dispute soon arose, however, regarding the status of one of Luminara's expert witnesses, which stretched through the summer and fall. *See generally Luminara Worldwide, LLC v. Liown Elecs. Co.*, No. 14-cv-3103 (SRN/FLN), 2016 WL 6774229 (D. Minn. Nov. 15, 2016). Specifically, the parties disputed Luminara's continued assertion of attorney-client privilege over documents considered by Doug Patton, one of the founding members of Candella and also a designated Rule 26(a)(2)(C) non-reporting expert witness. *See id.* at *1-3. The matter was not finally resolved until mid-November, when this Court ruled that, by designating Patton as a non-reporting expert witness, Luminara had waived privilege as to the disputed documents. *Id.* at *5. It then gave Luminara a choice: proceed with Patton as an expert witness and waive privilege, or withdraw his designation.

Ultimately, Luminara chose the latter option. (*See* Nov. 22, 2016 Letter [Doc. No. 692].) In doing so, however, the Court and the parties were left in some doubt regarding the effect on the pending motions for summary judgment—both of which depended (either in support or in opposition) in part on Patton's testimony. As relevant to the present motion, on December 20, 2016, the parties produced a joint status report

concluding that four of the six issues encompassed by the motion were ripe for disposition, and that memoranda relating to the other two would need to be refiled. (*See* Joint Status Report at 1.) In line with the parties' representations, the Court has chosen to address the four ripe matters immediately.

## III.     DISCUSSION

### A.     Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it may affect the outcome of the lawsuit. *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, 812 F.3d 701, 707 (8th Cir. 2016). Likewise, an issue of material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of establishing a lack of genuine issue of fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the Court must view the evidence and any reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In responding to a motion for summary judgment, however, the nonmoving party may not rest on mere allegations or denials, but must "demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

### B.     Validity of Claims 1 and 13 of the '166 Patent

The first issue raised by Defendants on this motion for summary judgment involves the alleged invalidity of claims 1 and 13 of Luminara's '166 patent. Specifically, Defendants argue that both claims are anticipated under 35 U.S.C. § 102 because a single prior art reference—the '455 patent—discloses each and every limitation of the claimed invention. *See Purdue Pharma L.P. v. Epic Pharma, LLC*, 811 F.3d 1345, 1351 (Fed. Cir. 2016). The relevant claim language from the '166 patent is reproduced here:

> 1.   A pendulum member for generating a flickering flame effect, comprising:
>
>       a body with upper and lower portions;
>
>       a flame silhouette element extending outward from the upper portion of the body; and
>
>       a hole in the body below the flame silhouette element, wherein the hole is configured to receive a flame support element such that the flame support element passes through the hole and the body is free to pivot when supported by the flame support element.
>
> 13.  An apparatus for generating a flickering flame effect, comprising:
>
>       a housing including an interior space;
>
>       a flame body including a pivot hole through the flame body; and
>
>       a support element provided extending across the interior space and through the pivot hole, wherein the flame body is pivotally supported within the interior space by the support element.

('166 patent, 23:42-51, 24:20-28.)

As to claim 1, Defendants begin by noting that there is "little doubt" that the '455 patent discloses generating a "flickering flame effect," as the patent's title is "System and

Method for Generating a Flickering Flame Effect."  (Defs.' Mem. in Supp. of Mot. for Summ. J. [Doc. No. 487] at 3.)  Likewise, they argue that the '455 patent discloses pendulum members that meet each element of claim 1.  Looking at Figure 12 of the '455 patent (reproduced below), Defendants note the disclosure of a device in which a gimbal supports a pendulum body (500) with an attached flame silhouette (502).  The body of the '455 patent further discloses a hole (503) through which a support rod (18) passes.  Finally, Defendants contend that Figure 4 (reproduced below) of the '455 patent shows that the pendulum body is free to pivot when supported by the rod (18).  Thus, because all elements of claim 1 of the '166 patent are disclosed by the '455 patent, Defendants assert that the claim is anticipated and invalid.



*FIG. 12*



*FIG. 4*

With regard to claim 13, Defendants note that the '455 patent discloses a housing (32) containing an interior space, a flame body (500) including a pivot hole (503), and a

support rod (18) that extends across the interior space and through the pivot hole. In Defendants view, the result is a flame body that is "pivotally supported" within the interior space of the housing, as required by the '166 patent. (*Id.* at 6.) With every element seemingly met, Defendants contend that claim 13 is also invalid on anticipation grounds.

Luminara raises two arguments in response, which the Court will address separately below. The first is that the '166 patent requires "chaotic pivoting" as an element of both claims 1 and 13, and that a reasonable jury could find that the '455 patent fails to disclose this requirement. (*See* Pl.'s Mem. in Opp'n to Mot. for Summ. J. [Doc. No. 528] at 7-12.) The second is that both claims require the flame body to pivot "at the location where the body is supported by the flame support element," and that, in contrast, the '455 patent teaches rotation at the points (24) connecting the rod (18) to the ring-shaped member (20), and on the housing (22, 23). (*Id.* at 14-17.) In analyzing these contentions, the Court is mindful of the fact that on *inter partes review* the PTAB recently determined that both claims 1 and 13 of the '166 patent are indeed anticipated by the '455 patent. (*See generally* Feb. 10, 2017 Letter [Doc. No. 765], Ex. 3 ("PTAB Order").) To the extent the PTAB considered arguments similar to those raised before this Court, its reasoning has been carefully scrutinized and will be afforded such weight as is consistent with the different procedural posture, standard of review, and burden of proof applied. *Cf. Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011) (holding that invalidity must be proved by clear and convincing evidence) *with* 35 U.S.C. § 316(e) (setting forth burden of proof in *inter partes review* as preponderance of the evidence).

10

1.    The "Chaotic Pivoting" Argument

Luminara's "chaotic pivoting" argument relies upon the testimony of its expert witness, Dr. Stuart Brown.  In particular, Luminara directs the Court's attention to two separate statements made by Dr. Brown that it argues raises a factual question regarding whether the '455 patent discloses the sort of "chaotic pivoting" required by both claims 1 and 13 of the '166 patent.  (*See id.* at 11, 12.)  The first, taken from Dr. Brown's deposition testimony, is illustrative, and is reproduced here:

> Q.  Do you think that chaos, as it's sort of defined or understood in the context of the ['166] patent, requires chaotic movement in three dimensions, or two, or one?
>
> A.  I think that it requires three dimensions.
>
> Q.  Is that the –
>
> A.  Three or more.  I'm sorry.  Three or more.
>
> Q.  Is that the definition that you used in rendering your opinions in your reports?
>
> A.  Yes.
>
> Q.  So, if, say, there was a gimbal that only—that was sort of a two dimensional gimbal or two axis gimbal, would you say that that gimbal is not chaotic because it's only a two axis gimbal?
>
> A.  Yes.
>
> . . . .
>
> Q.  Do any of the embodiments in the '455 patent show a pendulum that can move chaotically, using your definition from earlier today?
>
> A.  So the gimbal, I believe, cannot.  It's my opinion that the gimbal cannot.

(Merrill Decl. [Doc. No. 534], Ex. 1 at 62:9-22, 99:8-13.)

Luminara argues that this testimony is in line with the Federal Circuit's construction of the specification of the '166 patent as explicitly disclaiming non-chaotic pivoting. *See Luminara*, 814 F.3d at 1353 ("By contrast, the specification disclaims non-chaotic pivoting."). Thus, Luminara contends that this fact issue precludes summary judgment. (Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 7.) As Dr. Brown has testified that chaotic movement requires movement in "three or more" axes, and the gimbal mechanism described in the '455 patent is indisputably limited to modulation in only two axes, Luminara asserts that a clear fact issue exists as to whether the '455 patent teaches the sort of chaotic movement found in the claims at issue here. (*Id.* at 12.)

Luminara's position is broadly in line with this Court's analysis in its preliminary injunction order, and if the claim constructions found in that opinion remained valid, the Court would be inclined to agree with Luminara that a fact issue exists as to whether the '455 patent teaches truly chaotic movement. The problem, however, is that the Federal Circuit's decision on appeal of that preliminary injunction has expressly foreclosed Luminara's argument. Most pertinently, while it is manifestly true that the circuit court concluded that the '166 patent disclaims non-chaotic movement—and thus that the '455 patent, if it is to anticipate, must teach chaotic movement—it also held that the sort of chaotic movement envisioned by the '166 patent does *not* require movement in more than two axes. Indeed, the court expressly rejected this Court's construction of the "free to pivot" term—found in claim 1—as requiring "movement that is more than rotation

around two axes." *Luminara*, 814 F.3d at 1352.  On this point, the following passage

from the Federal Circuit's opinion is instructive:

> At this preliminary stage, we see no definition and no disavowal or
> disclaimer in the specification requiring motion in four different ways or
> directions.  Certainly, the specification teaches that in some embodiments,
> the body has a hole that is larger than the diameter of the supporting wire,
> allowing it to move side-to-side and to rotate around the support element.
> However, the specification also teaches that in other embodiments, it is
> preferable to have a rigid or semi-rigid support element—not a wire.  In
> these embodiments, the body would rotate around the support elements, but
> would not flutter or move side-to-side or in the other ways required by the
> district court.  *Thus, the specification teaches that non-rotational motion is
> optional*.

*Id.* at 1353 (internal citations omitted) (emphasis added).

The plain import of the circuit court's holding is that, while the '166 patent

certainly teaches chaotic pivoting, it does not require movement on more than two axes in

order to create that chaotic pivoting.[4]  When Dr. Brown testifies, therefore, that the '455

patent does not teach chaotic movement because chaotic movement requires movement

in three or more axes, he is testifying in a manner that directly contradicts the

construction given to the '166 patent by the Federal Circuit.  In other words, Dr. Brown's

definition of chaotic movement would disclaim embodiments of the '166 patent that the

Federal Circuit has said are expressly included within its terms.  If embodiments of the

'166 patent can be both "chaotic" and limited in movement to two axes, there is no

---

[4] While the Federal Circuit's preliminary claim construction is perhaps not technically
binding on this Court, *Balboa Instruments, Inc. v. Gecko Electronique, Inc.*, 31 F. App'x
658, 661 (Fed. Cir. 2002), it will not be disturbed without some showing that it was
erroneous.  *See Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*, 319
F. Supp. 2d 939, 942 (S.D. Iowa 2004).  No such showing has been offered by the parties
here.

reason to conclude that the mechanism of the '455 patent—which also specifies movement "articulated by a natural and *chaotic* external or internal force"—does not anticipate the '166 patent. ('455 patent, 6:55-56 (emphasis added).) *See Luminara*, 814 F.3d at 1354 ("The final limitation in claim 1 of the '166 patent—chaotic movement— seems to be met with this discussion of chaotic forces that can articulate the flame reflector of the candle device in the prior art '455 patent.").[5]

Thus, by importing a requirement into the '166 patent that movement can only be "chaotic" if it includes movement on more than three axes, Dr. Brown has based his conclusions on a claim construction that has been expressly rejected by the Federal Circuit. Expert testimony based on erroneous constructions is insufficient—as a matter of law—to create a triable issue of fact. *See Wiener v. NEC Elecs., Inc.*, 102 F.3d 534, 542 (Fed. Cir. 1996) ("Because [the expert's] statements rest on an incorrect claim construction, they do not create a factual dispute."); *AGA Med. Corp. v. W.L. Gore & Assocs., Inc.*, No. 10-cv-3734 (JNE/JSM), 2013 WL 12149182, at *4 (D. Minn. 2013) (expert opinion that applied improper claim construction insufficient to create fact issue). As Luminara presents no other evidence to oppose summary judgment on this issue, it has failed to meet its Rule 56 burden. Accordingly, Luminara's "chaotic movement" argument is insufficient to defeat Defendant's motion.

## 2.    The "Body Pivoting at the Support Element" Argument

---

[5] Notably, Luminara raised similar arguments relating to chaotic movement before the PTAB on *inter partes review*. (*See* PTAB Order at 9-15.) For substantially the same reasons discussed by the Court above, the PTAB concluded that Luminara's contentions were inconsistent with the Federal Circuit's reasoning, and rejected them. (*Id.* at 15-16.)

As previously noted, Luminara's second argument in opposition to summary judgment is that both claims 1 and 13 of the '166 patent require that the flame body pivot at the hole where the body is supported by the support element. In contrast to this requirement, Luminara contends that the support rod (18) of the '455 patent pivots at points 24—notably not where the flame body itself is supported. (*See* Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 16-17.) In other words, Luminara takes the position that in the '455 patent the flame body is essentially fixed to its support element, and that it is the support rod itself, not the flame body, that is free to pivot. (*Id.* at 16.)

Defendants contend in response that Luminara is improperly construing the plain language of claims 1 and 13, which do not directly reference the location where the flame body pivots. For example, they note that claim 1 requires that "the body is free to pivot *when* supported by the flame support element." (Defs.' Reply Mem. in Supp. of Mot. for Summ. J. [Doc. No. 546] at 3.) In their view, Luminara improperly construes the claim to read that "the body is free to pivot *where* supported by the flame support element." (*Id.*) Even if Luminara's proposed construction were correct, however, Defendants assert that the '455 patent *does* teach rotation around the support rod, and that Luminara is mistaken in suggesting otherwise. (*Id.* at 4.)

Having carefully considered the matter and the parties' arguments regarding claim construction, the Court is of the opinion that the real crux of the dispute is not so much whether the body is free to pivot at the flame support element, as Defendants argue, but whether the body is free to pivot on its own *at all*. Luminara's position, which is amply supported by the plain language of claims 1 and 13, is that the '166 patent's flame body

15

pivots in its own right about the support element—it is merely *supported* by the support element, not fixed to it.  In contrast, Luminara's expert has opined that the '455 patent's flame body is fixed to the support rod (18)—making the rod the pivoting member, not the flame body.  While Defendants may indeed prove correct that Dr. Brown is mistaken and the flame body is free to pivot about the support rod, that is a question of fact to be argued to the jury.  *Cf. Cynosure, Inc. v. CoolTouch, Inc.*, 660 F. Supp. 2d 128, 133-34 (D. Mass. 2009); *IMX, Inc. v. LendingTree, LLC*, 405 F. Supp. 2d 479, 489-90 (D. Del. 2005).  Nothing in the '455 patent itself clearly settles the issue as a matter of law.  Thus, the Court agrees that a fact issue exists sufficient to preclude summary judgment, and that Defendants' motion, as to the issue of the invalidity of claims 1 and 13 of the '166 patent, must be denied.[6]

### C.    Construction of the "Affixed" Claim Term

The second issue raised by Defendants' motion concerns the proper construction of the claim term "affixed," as that term is used in Luminara's '355 and '319 patents.  As Defendants note, during *inter partes* review proceedings before the PTAB, Luminara advocated for a narrow definition of the term, such that "affixed" (as in, a support wire that is "affixed to the housing sidewall") means "fixedly attached."  (Defs.' Mem. in Supp. of Mot. for Summ. J. at 19.)  Notably, by this definition, supports that are "rotatably secured" to the housing are distinguishable.  Luminara's purpose in urging this

---

[6] Although the PTAB apparently rejected Luminara's "free to pivot" arguments, it appears to the Court that it did so based on considerations that are not presented by either party in this motion.  (*See* PTAB Order at 20-21.)  In light of that fact, and mindful of the different procedural posture and standard of review, the Court respectfully differs from the PTAB on this issue.

construction upon the PTAB was apparently to distinguish the '455 patent, which relies on "rotatably secured" support pins. (*Id.*) The PTAB agreed with Luminara, and adopted the "fixedly attached" definition for those claims of the '355 and '319 patents covered by its proceedings. (*See* McKeever Decl. [Doc. No. 488], Ex. O at 17-18, 29-32.)

Defendants now argue that Luminara should be held to the narrow definition it successfully advocated for before the PTAB as to those claims that were not covered by the *inter partes* review (i.e., claims 17 and 18 of the '319 patent, and claims 16-19, 21-23, 26, and 27 of the '355 patent), each of which requires the existence of a support wire that is "affixed to the housing sidewall." (Defs.' Mem. in Supp. of Mot. for Summ. J. at 20.) In support, Defendants note that Luminara's definition of the term has become part of the prosecution histories for both patents, that they are accordingly entitled to rely on that definition, and that they have in fact relied upon it to produce prototype candles in which the support wire is "rotatably secured" rather than "fixedly attached." (*Id.*) *See, e.g.*, *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (noting that the prosecution history consists of the complete record of all proceedings before the Patent and Trademark Office); *see also Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1372-73 (Fed. Cir. 2005) (observing that "competitors are entitled to rely" on the patentee's representations contained in the prosecution history). Thus, Defendants ask the Court to adopt Luminara's definition of the "affixed" term and issue a declaratory judgment of non-infringement as to its rotating-wire prototype. (*See* Hr'g Tr. [Doc. No. 576] at 21:20-25.)

17

In response, Luminara does not directly attack the substance of Defendants' motion. Rather, it argues that Liown's rotating-wire prototype candle was manufactured solely in response to the PTAB's ruling, and because it has never been marketed or offered for sale, Luminara cannot accuse it of infringement. (Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 19 (citing 35 U.S.C. § 271(a).) Accordingly, Luminara protests that there is no case or controversy for the Court to adjudicate, and that all Defendants actually seek is an unconstitutional advisory opinion. (*Id.*) *See Flast v. Cohen*, 392 U.S. 83, 96 (1968) (noting that "it is quite clear that the oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions") (quotation and citation omitted).

## 1. Declaratory Judgment Standard

The Court's authority to issue a declaratory judgment is governed in the first instance by the Declaratory Judgment Act, which, in relevant part, provides:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). The phrase "case of actual controversy" refers to those "cases" and "controversies" that are justiciable under Article III of the Constitution. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Because of this requirement, a court may not adjudicate "a difference or dispute of a hypothetical or abstract character" or "one that is academic or moot." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). Unfortunately, drawing the line between those cases satisfying the actual

controversy requirement and those that do not is an inexact science.  As the Supreme Court has recognized, the "difference . . . is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy."  *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).  Accordingly, the declaratory judgment analysis must be carefully calibrated to the particular facts of each case, asking "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  *MedImmune,* 549 U.S. at 127.  Even assuming that all the prerequisites for a declaratory judgment have been met, however, the district court's exercise of its authority is discretionary.  *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 883 (Fed. Cir. 2008).

Prior to the Supreme Court's decision in *MedImmune*, the Federal Circuit applied a two-prong test to determine whether there was an actual controversy in suits requesting a declaration of noninfringement, invalidity, or unenforceability.  *See Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1283 (Fed. Cir. 2007).  The first prong examined whether the conduct by the patentee created a "reasonable apprehension" of suit on the part of the declaratory judgment plaintiff.  *Cat Tech*, 528 F.3d at 879.  The second prong looked to the declaratory judgment plaintiff's conduct, and considered whether there had been "meaningful preparation" to conduct potentially infringing activity.  *Arrowhead Indus. Waters, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988).  The Supreme Court rejected the "reasonable apprehension" prong in *MedImmune*,

19

however, concluding that the test was unduly restrictive. *See* 549 U.S. at 132 n.18. *MedImmune*'s impact on the "meaningful preparation" prong was less clear. Considering the matter in *Cat Tech*, the Federal Circuit concluded that "although *MedImmune* articulated a 'more lenient legal standard' for the availability of declaratory judgment relief in patent cases, the issue of whether there has been meaningful preparation to conduct potentially infringing activity remains an important element in the totality of circumstances which must be considered . . . ." 528 F.3d at 880.

In the present matter, the dispute between the parties revolves around the question of "meaningful preparation." *See Cat Tech*, 528 F.3d at 880 n.2. Here, the Court must ask whether the declaratory judgment plaintiff has "taken significant, concrete steps to conduct infringing activity," such that the dispute is both "immediate" and "real." *Id.* at 880.

### 2.    Immediacy

"A party may not 'obtain a declaratory judgment merely because it would like an advisory opinion on whether it would be liable for patent infringement if it were to initiate some merely contemplated activity.'" *Cat Tech*, 528 F.3d at 881 (quoting *Arrowhead*, 846 F.2d at 736). Thus, the Federal Circuit has consistently required that the declaratory judgment plaintiff demonstrate either production of the allegedly infringing device, or preparation to produce that device. *See Goodyear Tire & Rubber, Co. v. Releasomers, Inc.*, 824 F.2d 953, 955-56 (Fed. Cir. 1987). Importantly, that court has also repeatedly emphasized that the "immediacy" requirement turns on the state of events at the time the claim for declaratory judgment was filed. *See, e.g.*, *Vantage Trailers, Inc.*

*v. Beall Corp.*, 567 F.3d 745, 748 (Fed. Cir. 2009) ("The declaratory judgment plaintiff must establish that this requirement was satisfied at the time the complaint was filed—post-filing conduct is not relevant."); *Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1378 (Fed. Cir. 2004); *West Interactive Corp. v. First Data Res., Inc.*, 972 F.2d 1295, 1297 (Fed. Cir. 1992); *Iridium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985). As a result, the longer the period of time between the date on which the claim was filed and the date on which potentially infringing activities will begin, "the more likely the case lacks the requisite immediacy." *Sierra*, 363 F.3d at 1378-79.

In keeping with that requirement, the Federal Circuit has found delays of several months or more between filing and potential infringement to be too indefinite to warrant declaratory judgment relief. The circuit court's holding in *Sierra Applied Sciences* is instructive on the matter. As relevant here, the plaintiff in that suit brought an action for declaratory judgment after being warned by the defendant that a 150 kW power supply unit being developed by the plaintiff infringed the defendant's patents. *Id.* at 1366-67. Suit commenced on September 14, 2001, and a hearing was held on the defendant's motion to dismiss for lack of subject matter jurisdiction on March 24, 2003. *Id.* at 1367, 1370. At the hearing, it emerged that while the plaintiff had since developed a working power supply unit, it had not had one at the time suit was commenced, or for a full year afterwards. *Id.* at 1372. The defendant also introduced testimony showing that no marketing literature had been created, and that the plaintiff was not sure if the unit would ever be sold on the market. *Id.* On these facts, the circuit court concluded that the record

did not demonstrate sufficient immediacy to warrant declaratory judgment relief. *Id.* at 1379.

Similar facts—and results—may be found in at least two other Federal Circuit cases. In *Lang v. Pacific Marine & Supply Co.*, 895 F.2d 761 (Fed. Cir. 1990), the court affirmed the dismissal of a suit seeking a declaratory judgment that a ship in the process of being built would infringe, upon completion, certain hull-design patents. The Federal Circuit concluded that immediacy was absent because the allegedly infringing activity would not occur for at least nine months after the complaint was filed. 895 F.2d at 765. Likewise, in *Telectronics Pacing Systems, Inc. v. Ventritex, Inc.*, 982 F.2d 1520 (Fed. Cir. 1992), the court affirmed dismissal of a declaratory judgment action where the plaintiff alleged that a medical device would infringe its patent upon the device's approval by the Food and Drug Administration ("FDA"). In the court's view, there could be no immediacy where the device was "years away from potential FDA approval." 982 F.2d at 1527.

Applying these cases to the present matter, the Court concludes that Defendants have not demonstrated the sort of immediacy required to raise a justiciable controversy for purposes of the Declaratory Judgment Act. Defendants' declaratory judgment claim was most recently filed on May 8, 2015 (*See* Am. Answer to Third Am. Compl. [Doc. No. 179].) As Defendants admit, the design-around prototype candle was not developed until after the PTAB issued its decision on February 8, 2016. (*See* McKeever Decl., Ex. H at 1.) Thus, at the earliest, the prototype did not exist until at least nine months had passed after the date the declaratory judgment claim was filed. Such a lengthy delay

between the filing of the claim and the time when infringement became a possibility does not, in this Court's view, evidence sufficient immediacy to warrant the relief Defendants request.[7]

As the Court finds that the immediacy element of "meaningful preparation" is absent here, it need not consider the related "reality" requirement. Defendants' motion impermissibly seeks an advisory opinion as to whether its "rotatably secured" design-around prototype infringes Luminara's '355 and '319 patents. Accordingly, the motion for summary judgment is denied as to this issue.

### D. Infringement of Liown's '986 and '137 Patents

Defendants next raise the issue of whether two product designs developed by Luminara—referred to by the parties as "RD0" and "RD1"—infringe Liown's '986 and '137 patents. (*See* Defs.' Mem. in Supp. of Mot. for Summ. J. at 28.; Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 34.) Defendants argue that it is undisputed that these designs infringe the following asserted claims in those patents:

| PATENT | DESIGN | CLAIMS |
|---|---|---|
| '986 | RD0 | 9, 21 |
| '137 | RD0, RD1 | 1, 2, 3, 5, 8, 9, 13, 14, 15, 17, 18, 20 |

---

[7] The Court is also mindful of the Federal Circuit's admonition that lack of evidence of efforts to advertise or sell a potentially infringing device may also indicate that a dispute lacks the requisite immediacy. *See Cat Tech*, 528 F.3d at 883. Although Defendants advised the Court at the hearing on this motion that "marketing preparations are already underway" and that sales would be commencing shortly, no record evidence has been submitted to that effect. (*See* Hr'g Tr. at 22:12-19, 25:16-23.)

In particular, Defendants note that Luminara's response to their infringement contentions did not dispute that the RD0 product infringes the '986 patent claims, conceded that the RD0 product infringes the '137 patent, and conceded that the RD1 product infringes all but one claim (claim 12) of the '137 patent. (*See* Defs.' Mem. in Supp. of Mot. for Summ. J. at 29; *see also* McKeever Decl., Ex. HH at 2-3, 10-11.) Further, Dr. Brown's rebuttal expert report disputes only the question of whether RD0 infringes claims 10, 11, and 18 of the '137 patent, and whether RD1 infringes claims 11 and 12 of the '137 patent. (*See* McKeever Decl., Ex. F at 8-10.) Although Defendants note that Dr. Brown stated his opinion that the issue of infringement is essentially irrelevant because all claims of the '986 and '137 patents are invalid as anticipated, they argue that this opinion merely raises a defense to liability, and has no bearing on the issue of infringement. (*See* Defs.' Mem. in Supp. of Mot. for Summ. J. at 30.)

Luminara does not contest that Defendants are correct regarding the issue of literal infringement. Rather, it argues that summary judgment is unwarranted here because the claims asserted by Defendants are invalid, as well as unenforceable due to inequitable conduct. (Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 35-36.) While Luminara recognizes that "infringement and validity are separate issues," it further argues that courts in this District have previously held that partial judgment of infringement should not be entered where that judgment will leave the issue of invalidity unresolved. (*Id.* at 36-37.) *See Hasel v. Danville Materials, Inc.*, No. 01-cv-2009 (JMR/JSM), slip op. at 12-13 (D. Minn. Jan. 2, 2003).

24

Having reviewed the record and the parties' briefs, the Court agrees that there is no dispute that claims 9 and 21 of the '986 patent, and claims 1-3, 5, 8, 9, 13-15, 17, 18, and 20 of the '137 patent are infringed by the RD0 design (as to the '986 patent) and the RD0 and RD1 designs (as to the '137 patent). The question thus becomes whether partial summary judgment on the issue of infringement is warranted where Luminara maintains its defense of invalidity. For the reasons that follow, the Court concludes that it is.

As an initial matter, the parties are correct that infringement and invalidity are distinct issues. While a finding of invalidity may ultimately preclude a finding of liability, it will not by itself preclude a finding of infringement. *See, e.g.*, *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1929 (2015) (observing that "invalidity is not a defense to infringement, it is a defense to liability"). Nor is it the case that deciding infringement in such a context is disfavored. *See Taser Int'l, Inc. v. Stinger Sys., Inc.*, 705 F. Supp. 2d 1115, 1153-54 (D. Ariz. 2010) (noting that "[c]ourts routinely enter summary judgment concerning infringement, saving questions of validity for trial"). Indeed, the Federal Circuit "has long recognized that patent infringement and invalidity are separate and distinct issues," and that while "an invalid claim cannot give rise to liability for infringement, whether it is infringed is an entirely separate question capable of determination without regard to its validity." *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 320 F.2d 1354, 1365 (Fed. Cir. 2003) (quotation and citation omitted); *see also Commil*, 125 S. Ct. at 1928 ("When infringement is the issue, the validity of the patent is not to be confronted.").

The case law cited by Luminara is not to the contrary. Although it is true that in *Hasel* Magistrate Judge Noel determined that summary judgment of infringement was inappropriate where the question of invalidity remained, he was motivated by concerns that are not present here. Most notably, in that case, the defendants did not admit infringement, and the court was concerned that infringement and validity would require common claim constructions. *Hasel*, slip op. at 13. Here, of course, Luminara does not contest infringement and the Court has already issued its claim construction order.[8] Two Federal Circuit opinions cited both by Magistrate Judge Noel in *Hasel* and by Luminara in its brief are likewise distinguishable. According to Luminara, *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1582 (Fed. Cir. 1983), and *Simmons Fastener Corp. v. Ill. Tool Works, Inc.*, 739 F.2d 1573, 1576 (Fed. Cir. 1984), stand for the proposition that "[w]hen questions of validity and infringement are raised in the same proceeding, the trial court should decide both issues and enter judgment on both." *Simmons Fastener*, 739 F.2d at 1576. While the Federal Circuit did of course say as much, its purpose in doing so was not to require that both issues be decided at the *same time*, but merely to emphasize that the district court should render judgment as to both. *See Medtronic*, 721 F.2d at 1582. In contrast to Luminara's contentions, neither case prohibits (or even casts doubt upon) the practice of entering judgment on only one issue and leaving the other for trial.

---

[8] Notably, Luminara does not identify any additional claims requiring construction for purposes of determining invalidity.

Because the Court concludes that there is no dispute on the issue of infringement of claims 9 and 21 of the '986 patent, and claims 1-3, 5, 8, 9, 13-15, 17, 18, and 20 of the '137 patent, and thus no factual question for resolution by a jury, it agrees that partial summary judgment is warranted here. Defendants' motion is accordingly granted as to this issue.

The Court emphasizes, however, that its holding is a narrow one. While Defendants are entitled to entry of partial judgment on the uncontested issue of infringement, the matter of invalidity remains very much alive, and must be resolved before a jury. And the Court is mindful of concerns raised by Luminara that entry of partial judgment on this issue may allow Defendants to unfairly portray themselves as "victors," despite the fact that no liability may result. (*See* Hr'g Tr. at 61:3-12.) *See Shelcore, Inc. v. Durham Indus.*, 745 F.2d 621, 628 (Fed. Cir. 1984) (noting that one "can incur no liability for 'infringement' of invalid claims'"). The Court expects that any public announcements made regarding this judgment will accurately disclose the unfinished nature of this dispute.

### E.     Luminara's Alleged Prior Art References

The last issue raised by Defendants' motion concerns various alleged prior art references cited by Luminara as invalidating Liown's '986 and '137 patents. In particular, Defendants contend that three references relied upon by Dr. Brown in his expert report do not qualify as prior art under pre-AIA 35 U.S.C. § 102. The Court will consider the parties' arguments as to each reference separately below.

#### 1.     The 2008 Schnuckle Prototype Candles

27

The first challenged reference consists of certain prototype flameless candles designed by Disney engineer Gary Schnuckle in 2008, including an alleged single-pendulum prototype. (*See* McKeever Decl., Ex. M at 5.) According to Luminara, these prototypes constitute prior art under pre-AIA 35 U.S.C. § 102(g)(2) because they were "made in this country" before the earliest claimed invention date of Liown's '986 and '137 patents, and were not "abandoned, suppressed, or concealed . . . ." (*See* Pl.'s Mem. in Opp'n to Summ. J. at 28.) To substantiate the existence of these prototypes, Luminara points primarily to Schnuckle's own deposition testimony. (*See* Merrill Decl., Ex. 9 at 63:3-22.)

In response, Defendants argue that Schnuckle's testimony alone is insufficient—as a matter of law—to meet the clear and convincing standard of proof necessary to invalidate a patent on a claim of priority. (*See* Defs.' Mem. in Supp. of Mot. for Summ. J. at 31 (citing *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1367 (Fed. Cir. 1999) ("[W]e have stated that 'the case law is unequivocal that an inventor's testimony respecting facts surrounding a claim of derivation or priority of invention cannot, standing alone, rise to the level of clear and convincing proof.'")).) While Defendants acknowledge that Luminara has also put forth two documents that allegedly corroborate Schnuckle's testimony, they contend that these documents are so vague as to be insufficient to discharge Luminara's evidentiary burden. Further, Defendants contend that even if Schnuckle's testimony is taken at face value, it is clear from his own statements that he decided against pursuing a single pendulum design, and thus must be

held to have "abandoned, suppressed, or concealed" the concept.  (*See* Defs.' Mem. in Supp. of Mot. for Summ. J. at 32-33.)

Pre-AIA 35 U.S.C. § 102(g)(2) provides in relevant part that "[a] person shall be entitled to a patent unless – before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it."  The Federal Circuit has indicated that an invention is "made in this country" when it is conceived (anywhere) and reduced to practice in the United States. *See Solvay S.A. v. Honeywell Int'l Inc.*, 742 F.3d 998, 1000 (Fed. Cir. 2014) ("Making the invention requires conception and reduction to practice . . . .  Although the inventors may reside in a foreign country and conceive the invention abroad, a reduction to practice made outside the United States is beyond the scope of § 102(g)(2) prior art.").  Likewise, an invention will be deemed abandoned, suppressed, or concealed if "within a reasonable time after completion, no steps are taken to make the invention publicly known." *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1039 (Fed. Cir. 2001).  Finally, as the parties both admit, because invalidity must be proven by clear and convincing evidence, pre-AIA § 102(g)(2) prior art consisting solely of an inventor's uncorroborated testimony is insufficient, as a matter of law, to invalidate a patent. *See Finnigan Corp.*, 180 F.3d at 1367.

In light of these considerations, three things must be shown in order for the Schnuckle prototypes to qualify as prior art: (1) that Schnuckle's deposition testimony is corroborated; (2) that the Schnuckle prototypes were conceived and reduced to practice; and (3) that they were not abandoned, suppressed, or concealed.  In the Court's view,

29

Luminara has failed to present evidence sufficient to demonstrate at least the second of these three requirements. As a matter of law, therefore, the Schnuckle prototypes cannot qualify as prior art within the meaning of pre-AIA § 102(g)(2).

Conception and reduction to practice are legal determinations to be made by the court. *See Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1096). The Federal Circuit has defined "conception" as the "formation, in the mind of the inventor, of a definite and permanent idea of a complete and operative invention, as it is hereafter to be applied in practice." *Solvay*, 622 F.3d at 1376. Likewise, actual reduction to practice (as opposed to constructive, which is not at issue here) requires "that the invention be embodied in tangible form in the United States, not simply reported." *Scott v. Koyama*, 281 F.3d 1243, 1247 (Fed. Cir. 2002). In other words, "reduction to practice of a complex mechanical device . . . requires that the device was subjected to a test under actual working conditions which demonstrated not that the device might work, but that it actually did work." *Newkirk v. Lulejian*, 825 F.2d 1581, 1582 (Fed. Cir. 1987) (quoting *Chandler v. Mock*, 150 F.2d 563, 565 (C.C.P.A. 1945)).

Here, apart from Schnuckle's own testimony, Luminara simply does not have any evidence sufficient to create a fact issue regarding actual reduction to practice of a prototype in 2008. As Defendants properly observe, the two documents cited by Luminara as corroborating Schnuckle's testimony on this point do not in any way indicate that a single or dual pendulum candle design was actually constructed. For instance, while the first document describes some of the aspects of such a candle, it

30

makes no reference to a prototype.[9]  (*See* Merrill Summ. J. Decl. [Doc. No. 504], Ex. N.) In contrast, while the second document does make reference to a "mockup," there is no indication at all that this mockup incorporated a pendulum (indeed, the sole limitation actually discussed—the use of a fan for flame modulation—is entirely inconsistent with the accused Liown patents).[10]  (*See* Millikan Decl. [Doc. No. 386], Ex. E at DEI2274.)

Bereft of critical detail as Luminara's allegedly corroborating documents are, the Court is left to conclude that no reasonable jury could find that they corroborate Schnuckle's testimony regarding reduction to practice of a single or dual pendulum prototype in 2008.  Because the only remaining evidence to support the existence of the 2008 prototype—Schnuckle's own testimony—is insufficient on its own to substantiate the prior art, *see Finnigan Corp.*, 180 F.3d at 1367, the Court concludes that summary judgment is warranted as to this alleged reference.

### 2.    The 2010 CES Prototypes

The second challenged reference is to various flameless candle prototypes that were developed by Candella and displayed at CES in Las Vegas in early January 2010. (*See* McKeever Decl., Ex. M at 9.)  Luminara contends that these prototypes represented a variation of Schnuckle's work, and constitute prior art under at least pre-AIA 35 U.S.C. §§ 102(a), (f), and (g)(2).  (*See* Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 31-32.)

---

[9] The Court observes in passing that this particular document contains several other flaws that raise questions regarding its evidentiary value.  Most notably, it is undated and contains no information regarding its authorship.

[10] The Court again observes that this document contains other potential infirmities, including the fact that it is dated March 2007—hardly consistent with Schnuckle's testimony that he developed his prototypes in 2008.

The Court agrees that a fact issue exists at least as to whether these prototypes qualify as prior art under § 102(a).  That section renders unpatentable inventions that were "known or used by others in this country . . . before the invention thereof by the applicant for a patent."  The Federal Circuit has interpreted the phrase "known or used" to mean "knowledge or use which is accessible to the public."  *Carella v. Starlight Archery*, 804 F.2d 135, 139 (Fed. Cir. 1986).  A display of the invention at a trade show may suffice to demonstrate publicly accessible knowledge or use.  *See, e.g.*, *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 312 F. Supp. 2d 632, 637 (D. Del. 2004); *DataQuill Ltd. v. Handspring, Inc.*, No. 01-4635, 2003 WL 737785, at *7 (N.D. Ill. Feb. 28, 2003).  Here, a reasonable jury could conclude that, by displaying various prototypes to the public at the CES show, Luminara had made its knowledge of the invention accessible to the public.  Accordingly, Defendants are not entitled to summary judgment as to this reference.

### 3.     The 2010 CAD Drawings

Finally, Defendants challenge Dr. Brown's reliance on various computer-aided design ("CAD") drawings allegedly sent to Liown by Candella on March 19, 2010.  (*See* McKeever Decl., Ex. M at 9.)  According to Luminara, these drawings were provided to Liown for the express purpose of having Liown reduce them to practice.  In Luminara's view, the CAD drawings thus qualify as prior art under both pre-AIA 35 U.S.C. §§ 102(f) and (g)(2).  (*See* Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 32-33.)

The Court again agrees with Luminara, at least as to § 102(f).  Under that section, a person is not entitled to a patent if "he did not himself invent the subject matter sought

to be patented."  "This is a derivation provision, which provides that one may not obtain a patent on that which is obtained from someone else whose possession of the subject matter is inherently 'prior.'"  *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1401 (Fed. Cir. 1997).  In contrast to other provisions of the section, § 102(f) can be applied to "communications between the inventor and another which may never become public."  *Id.* at 1401-02.  To prove derivation under § 102(f), the "party asserting invalidity must prove both prior conception of the invention by another and communication of that conception to the patentee."  *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1344 (Fed. Cir. 2003) (citation omitted).  The communication must be sufficient to enable a person of ordinary skill in the art to practice the patented invention.  *Id.*

Here, of course, Luminara contends that it gave detailed design drawings to Liown for the express purpose of allowing Liown to reduce those drawings to practice.  If true, that communication inherently demonstrates not only prior conception on the part of Luminara, but the sufficiency of the transmittal of the conception to the supposed inventor.   In light of this fact, the Court concludes that summary judgment is not warranted as to this third reference.

## IV.    ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Defendants' Motion for Summary Judgment [Doc. No. 485] is **GRANTED IN PART** and **DENIED IN PART** as stated in this Order; and

2.    The parties are **ORDERED TO SHOW CAUSE** within ten days of the date of this Order why the Order should not be unsealed, and to specify any portion warranting redaction.


Dated: March 29, 2017                         s/Susan Richard Nelson
                                              SUSAN RICHARD NELSON
                                              United States District Judge